461 A.2d 221

**COMMONWEALTH of Pennsylvania**

v.

**Anthony GRIGGS a/k/a Anthony Franklin, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 7, 1983.

Filed April 29, 1983.

Reargument Denied July 5, 1983.

1. *Collister v. Nationwide Life Insurance Co.*, 479 Pa. 579, 388 A.2d 1346 (1978), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979).

408

Stanton M. Lacks, Philadelphia, for appellant.

Francis Gralnek Gerson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, BECK and JOHNSON, JJ.

PER CURIAM:

Appellant, Anthony Griggs, pleaded guilty on June 15, 1976, when he was a fifteen-year-old juvenile, to murder in the third degree, robbery and criminal conspiracy. He was

sentenced to eleven and one-half to twenty-three months on the murder charge, eleven and one-half to twenty-three months on the criminal conspiracy charge (to run concurrently), and two to ten years on the robbery charge, which sentence was suspended; a ten year probation period was to run from the end of the sentences on the murder and criminal conspiracy charges.

Appellant's probation began when he was released from the State Forrestry Camp on November 15, 1977. On October 2, 1979, appellant was arrested and charged with robbery, criminal conspiracy, simple assault and recklessly endangering another person. On July 11, 1980, appellant was found not guilty on those charges in a non-jury trial after which a *Gagnon II* hearing [1] was held on September 22, 1980. The hearing judge found appellant to have violated his probation based upon his participation in the October 2, 1979 incident and therefore revoked his probation. A sentencing hearing was held on December 1, 1980 and appellant was sentenced to incarceration of from two to twenty years on the original robbery conviction; appellant appeals from that judgment of sentence.

Appellant claims that the trial court erred in finding him in violation of probation. We note preliminarily that the burden of proof is different in *Gagnon II* hearings and criminal trials. This Court summarized that difference in *Commonwealth v. Brown*, 281 Pa.Super. 348, 350–351, 422 A.2d 203, 204 (1980):

In *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973), our Supreme Court stated:

At ... trial the issue is whether the elements of the offense or offenses charged are present.... The focus of a probation violation hearing, even though prompted by a subsequent arrest, is whether the conduct of the

1. As noted in *Commonwealth v. Del Conte*, 277 Pa.Super. 296, 298 n. 2, 419 A.2d 780, 781 n. 2 (1980), "[w]hen [as here] the probation or parole violation is based on the commission of a crime, a preliminary hearing may substitute for a *Gagnon I* hearing. *Commonwealth v. Holmes*, 248 Pa.Super. 552, 375 A.2d 379 (1977); *Commonwealth v. Parker*, 244 Pa.Super. 113, 366 A.2d 941 (1976)."

probationer indicates that the probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future antisocial conduct. *Id.*, 452 Pa. at 114–15, 305 A.2d at 708. Unlike a criminal trial where "the burden is upon the Commonwealth to establish all of the requisite elements [of the offense(s) charged] beyond a reasonable doubt," *id.*, 452 Pa. at 114, 305 A.2d at 708, at a revocation hearing the Commonwealth need only prove a violation of probation by a preponderance of the evidence. *See Commonwealth v. Del Conte*, 277 Pa.Super. 296, 419 A.2d 780 (1980) (citing *United States v. Iannece*, 405 F.Supp. 599 (E.D.Pa.1975); *Commonwealth v. Lipton*, 238 Pa.Super. 124, 352 A.2d 521 (1975)).

*Brown* squarely held that acquittal on criminal charges, as in the instant matter, does not bar probation revocation premised upon those same charges. And this Court in *Commonwealth v. Fleeger*, 292 Pa.Super. 310, 313, 437 A.2d 60, 62 (1981) (quoting *Commonwealth v. Spinozzi*, 236 Pa.Super. 32, 35, 345 A.2d 181, 183 (1975)) stated: "[A] bare assertion of an arrest, 'without a conviction, is lacking in probative value. Thus, before a court may revoke probation, factual evidence, in addition to the fact of arrest, must be presented.' "

■ Appellant suggests that the facts presented at the *Gagnon II* hearing were not of sufficient probative value to sustain the revocation. We proceed to review the record of the hearing in order to evaluate appellant's claim. The victim of the October 2, 1979 chain snatching incident testified at the hearing that he was in the northbound Broad Street Subway train in the late evening when a group of men walked toward him and one of them grabbed his chain. His mother was with him in the train. He walked toward the group to retrieve the chain and became involved in a struggle. As a result of that fight, the complainant sustained a cut below his right eye and a loose tooth. He also lost his eyeglasses. He stated that without those

glasses, his vision was impaired. The complainant also testified that the train was packed and that he could not provide even a rough estimate as to the number of men involved in the incident, although he subsequently stated in response to a question from the Assistant District Attorney that more than three men were involved. The notes of testimony next reflect that the victim came into contact with two police officers, but it is not clear when this contact occurred. The victim testified that he told the officers he could pick out some of the group members. He testified: "[W]e went from the train we were on to them. When we got to the last train the two men that I picked out were on the train." Notes of Testimony ("N.T.") 9/22/80 at 28. When asked whether he saw in the courtroom the men to whom he pointed the night of the attack, he stated clearly that he could not make a positive identification.[2] He did testify that he selected the two men the night of the incident as having been in the group that attacked him based upon the clothing that the two of them wore. No explication was offered as to characteristics of the clothing that caused the victim to choose those two men. In answer to a subsequent question on direct examination, he reiterated that the clothing they wore was the only basis for his picking them out for the officers. The arresting officer had previously testified that he arrested appellant based upon information received from the victim and the victim's mother. The officer did not witness the attack. The lower court found that the appellant participated in the incident and that he therefore had violated the terms of his probation.

2. We note that the victim did not identify appellant at the non-jury trial either. The hearing judge did not preside at appellant's trial on the charges arising out of the October 2, 1979 incident, and notes of testimony of that trial are not a part of the record. After appellant protested his innocence at the sentencing hearing, the hearing judge offered his belief "that the reason for the finding of not guilty [at the non-jury trial] was the result of the Commonwealth's witness at that time not showing up." N.T. 12/1/80 at 29. The Assistant District Attorney corrected that mistaken impression by informing the court that the victim indeed had testified, but that he had failed positively to identify appellant.

We find to the contrary, however, that the revocation of probation based upon the October 2, 1979 incident to which the complainant's testimony so tenuously connected appellant was not predicated upon evidence of sufficient probative value, and we therefore vacate judgment of sentence. To summarize the record before us, there was testimony at the *Gagnon II* hearing that the victim selected two men as being members of a group of attackers on a crowded train. That selection was premised solely upon the clothing they wore (the uniqueness of which is nowhere of record). Further, the victim was unable to identify positively appellant either at trial or at the revocation hearing as being one of his attackers. This simply is not enough to justify a finding that appellant participated in the criminal conduct for which he was charged and acquitted.

██ Furthermore, appellant was not found to be in technical violation of the terms of his probation. It is clear, of course, that technical violations of probation are sufficient grounds for revocation. *Commonwealth v. Mallon*, 267 Pa.Super. 163, 406 A.2d 569 (1979) (and cases cited therein). We note that at the *Gagnon II* hearing, the evidence indicated that appellant had never reported to the probation authorities after his release in November 1977, but the agent of the State Board of Probation and Parole testified that he did not know whether appellant had been advised of an obligation to report to probation authorities. The probation agent testified that his first contact with appellant was on March 26, 1980 in a City Hall cell room four months after he had been arrested for the subway chain snatching incident and more than two and one-quarter years after his November 15, 1977 release. There were no attempts to contact appellant after his release until the probation board was informed that appellant had been rearrested. In its opinion, the lower court stated that "there was a serious question as to whether the defendant was advised that he had to report and this Court specifically found that he had

not technically violated his probation by not reporting."
Lower Court Opinion at 2–3.

We emphasize the testimony of that probation agent that departmental records do not indicate any notification of appellant that he was to report to probation authorities. No efforts were made to structure a program aimed at achieving the rehabilitative goal of the probation system. Lamentably, no efforts were made to supervise appellant or to help him adjust to society. As the United States Supreme Court noted in *Gagnon v. Scarpelli*, 411 U.S. 778, 785, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973) (quoting F. Remington, D. Newman, E. Kimball, M. Melli and H. Goldstein, Criminal Justice Administration, Materials and Cases at 910 (1969)) (footnote omitted):

> Revocation ... is, if anything, commonly treated as a failure of supervision. While presumably it would be inappropriate for a field agent never to revoke, the whole thrust of the probation-parole movement is to keep men in the community, working with adjustment problems there, and using revocation only as a last resort when treatment has failed or is about to fail.

Where, as here, no treatment or supervision was provided, we conclude that appellant now must be given the opportunity to reenter the community aided by the supervision which our probation system is obligated to provide.

Because we find that the revocation of appellant's probation rested upon a finding of participation in criminal activity which was not substantiated by the testimony offered at the *Gagnon II* hearing, we vacate judgment of sentence.[3]

Judgment of sentence is vacated, and this case is remanded with instructions to reinstate the original order of probation. Jurisdiction is relinquished.

SPAETH, J., concurs in result.

3. Appellant also raises claims of an improper sentence and ineffective assistance of prior counsel. In light of our disposition, we need not reach those issues.