J-E02004-20

2021 PA Super 166

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID SIMMONS | : | |
| | : | |
| Appellant | : | No. 2461 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 18, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004160-2017

BEFORE: BENDER, P.J.E., BOWES, J., SHOGAN, J., LAZARUS, J., OLSON, J.,
DUBOW, J., KUNSELMAN, J., MURRAY, J., and McCAFFERY, J.

OPINION BY OLSON, J.:                                    **FILED AUGUST 18, 2021**

Appellant, David Simmons, appeals from the judgment of sentence entered on July 18, 2018. We vacate Appellant's judgment of sentence and remand.

Appellant pleaded guilty to firearms not to be carried without a license and carrying firearms on the public streets of Philadelphia.[1] On December 18, 2017, the trial court sentenced Appellant to serve a term of six to 23 months in jail, followed by three years of probation, for his convictions. Sentencing Order, 12/18/17, at 1.

On February 19, 2018, Appellant was arrested and charged, at a separate docket number, with firearms not to be carried without a license and possession of a controlled substance.[2] ***See*** Docket Number:

---

[1] 18 Pa.C.S.A. §§ 6106(a)(1) and 6108, respectively.

[2] 18 Pa.C.S.A. § 6106(a)(1) and 35 P.S. § 780-113(a)(16), respectively.

CP-51-CR-0003561-2018 ("3561-2018"). The arrest occurred while Appellant was on parole in this case and before the term of probation in this case had begun. *See* N.T. Resentencing Hearing, 7/18/18, at 27.

On July 18, 2018, Appellant pleaded guilty to firearms not to be carried without a license and possession of a controlled substance at docket number 3561-2018 and the trial court sentenced Appellant to serve six to 23 months in jail, followed by three years of probation, for those convictions. N.T. Sentencing Hearing, 7/18/18, at 24.

As a result of Appellant's convictions at docket number 3561-2018, the trial court in the case at bar revoked Appellant's parole, anticipatorily revoked Appellant's probation, and resentenced Appellant to serve a term of two and one-half to five years in prison. N.T. Resentencing Hearing, 7/18/18, at 27 and 35; Sentencing Order, 7/18/18, at 1. Appellant filed a timely notice of appeal and, after we initially affirmed Appellant's judgment of sentence, Appellant filed an application for reargument *en banc*. We granted Appellant's application, withdrew the prior panel decision, and listed the case for *en banc* consideration. Appellant now raises the following claim to this Court:

> When the [trial] court revoked parole for a violation [resulting from new convictions,] did not the court lack authority under Pennsylvania law to also revoke a consecutive sentence of probation that [Appellant] had not yet begun to serve?

Appellant's Brief at 4.

"[I]n an appeal from a sentence imposed after the court has revoked probation, we can review the validity of the revocation proceedings, the

legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed." ***Commonwealth v. Wright***, 116 A.3d 133, 136 (Pa. Super. 2015) (citation omitted). On appeal, Appellant claims that the trial court erred when it found he violated a condition of an order of probation that, by its terms, had not yet commenced. Intertwined with this claim, Appellant also argues that, to the extent the trial court amended his original order of probation to run concurrently, rather than consecutively, the trial court illegally modified his sentence, as the trial court did not have jurisdiction to modify his sentence more than 30 days after imposition. Appellant's Brief at 10-25; ***see also Commonwealth v. Bischof***, 616 A.2d 6, 10 (Pa. Super. 1992) ("a modification of a sentence imposed on a criminal defendant which increases the punishment constitutes further or double jeopardy") (quotations and citations omitted); ***Commonwealth v. Everett***, 419 A.2d 793, 794 (Pa. Super. 1980) ("[s]ince the original [order of] probation was illegal, the sentence of imprisonment imposed for violation of that probation was illegal"). Appellant's claims fall within our scope of review, as they contend that the trial court lacked statutory authority to revoke his probation, that the trial court illegally modified his underlying sentence, and that his resulting sentence is illegal. We may thus consider the merits of Appellant's claims.[3]

_____

[3] Within his Pennsylvania Rule of Appellate Procedure 1925(b) statement, Appellant raised discretionary aspects of sentencing claims. A three-judge
*(Footnote Continued Next Page)*

Resolution of Appellant's claims require that we interpret various statutes. "Statutory interpretation is a question of law and therefore our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Peck*, 242 A.3d 1274, 1278 (Pa. 2020). Regarding our principles of statutory interpretation, our Supreme Court has explained:

> Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, we are mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, as a general rule, the best indication of legislative intent is the plain language of a statute. In reading the plain language, "[w]ords and phrases

panel held that the claims failed and affirmed Appellant's judgment of sentence. Appellant then filed an application for reargument, where he claimed that the trial court did not have statutory authority to revoke a consecutive order of probation before it began and, to the extent the trial court changed the original order of probation from "consecutive" to "concurrent," the trial court illegally modified his sentence. Further, Appellant argued that, since his claim concerned the legality of his sentence, he did not need to preserve the issue below. *See* Appellant's Application for Reargument, 11/25/19, at 3-14. The Commonwealth filed a response to the application and did not claim that Appellant waived any portion of his issues. Commonwealth's Letter in Lieu of Answer, 11/26/19, at 1. We then granted reargument and, in its substituted brief, the Commonwealth does not claim that Appellant waived his issues. *See* Commonwealth's Brief at 1-31.

As previously noted, Appellant's claims before this Court are necessarily intertwined and, together, challenge the legality of his sentence. Although Appellant did not raise his claims before the trial court, we may consider these claims on appeal, as "challenges to an illegal sentence can never be waived and may be raised *sua sponte* by this Court." *Commonwealth v. Tanner*, 61 A.3d 1043, 1046 (Pa. Super. 2013) (quotations and citations omitted).

- 4 -

shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. § 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia*: the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.

Notwithstanding the primacy of the plain meaning doctrine as best [representation] of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia*, the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1), (2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.

***Commonwealth v. Shiffler***, 879 A.2d 185, 189-190 (Pa. 2005) (some quotations, citations, and corrections omitted).

The statutes that govern the imposition and revocation of an order of probation are penal in nature and, as such, "must be strictly construed." 1 Pa.C.S.A. § 1928(b)(1); ***see also Commonwealth v. Hudson***, 231 A.3d 974, 978 (Pa. Super. 2020) ("[s]ince [the statute governing imposition of an order of probation] is a penal statute, we must strictly construe this provision"); ***Commonwealth v. Harner***, 617 A.2d 702, 704 (Pa. 1992) ("an

order placing a defendant on probation must be regarded as punishment for double jeopardy purposes"); ***Commonwealth v. Nicely***, 638 A.2d 213, 217 (Pa. 1994) ("[i]f there is a judicial determination that a probation violation has occurred, a sentence may be imposed and judgment at that point becomes final"); ***see also Nesbit v. Clark***, 116 A. 404, 407 (Pa. 1922) ("[a] penal statute is one which imposes a penalty or forfeiture for transgressing its provisions, or for doing a thing prohibited, and it is none the less a penal statute [even though] it is also remedial") (quotations and citations omitted).

As our Supreme Court has explained, the principle of strict construction "does not require that [we] give the words of a statute their 'narrowest possible meaning,' nor does it override the general principle that the words of a statute must be construed according to their common and approved usage." ***Commonwealth v. Hart***, 28 A.3d 898, 908 (Pa. 2011) (some quotations and citations omitted). "Rather, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt." ***Id.*** (quotations and citations omitted).

We initially set forth the statutes governing the imposition and revocation of an order of probation, as those statutes existed at the time Appellant's probation was imposed and revoked. To this end, we recite the relevant portions of Sections 9721, 9754, and 9771 of the Sentencing Code, prior to their amendments in December 2019.

Section 9721 of the Sentencing Code is entitled "[s]entencing generally." Section 9721(a) declares:

- 6 -

(a) General rule.--In determining the sentence to be imposed the court shall . . . consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:

(1) An order of probation.

(2) A determination of guilt without further penalty.

(3) Partial confinement.

(4) Total confinement.

(5) A fine.  . . .

42 Pa.C.S.A. § 9721(a) (effective September 4, 2012 to December 17, 2019).

Section 9754, entitled "[o]rder of probation," goes on to declare that, "[i]n imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not exceed the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision."  42 Pa.C.S.A. § 9754(a) (effective to December 17, 2019). Regarding the conditions of probation, Section 9754(b) and (c) declare:

(b) Conditions generally.**--**The court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life.

(c) Specific conditions.**--**The court may as a condition of its order require the defendant:

(1) To meet his family responsibilities.

(2) To devote himself to a specific occupation or employment.

(2.1) To participate in a public or nonprofit community service program unless the defendant was convicted of murder, rape, aggravated assault, arson, theft by extortion, terroristic threats, robbery or kidnapping.

(3) To undergo available medical or psychiatric treatment and to enter and remain in a specified institution, when required for that purpose.

(4) To pursue a prescribed secular course of study or vocational training.

(5) To attend or reside in a facility established for the instruction, recreation, or residence of persons on probation.

(6) To refrain from frequenting unlawful or disreputable places or consorting with disreputable persons.

(7) To have in his possession no firearm or other dangerous weapon unless granted written permission.

(8) To make restitution of the fruits of his crime or to make reparations, in an amount he can afford to pay, for the loss or damage caused thereby.

(9) To remain within the jurisdiction of the court and to notify the court or the probation officer of any change in his address or his employment.

(10) To report as directed to the court or the probation officer and to permit the probation officer to visit his home.

(11) To pay such fine as has been imposed.

(12) To participate in drug or alcohol treatment programs.

(13) To satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience.

(14) To remain within the premises of his residence during the hours designated by the court.

42 Pa.C.S.A. § 9754 (effective to December 17, 2019).

Finally, Section 9771 sets forth the rules for "[m]odification or revocation of [an] order of probation." It declares:

(a) General rule.--The court may at any time terminate continued supervision or lessen or increase the conditions upon which an order of probation has been imposed.

(b) Revocation.--The court may revoke an order of probation upon proof of the violation of specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation.

(c) Limitation on sentence of total confinement.--The court shall not impose a sentence of total confinement upon revocation unless it finds that:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

(d) Hearing required.--There shall be no revocation or increase of conditions of sentence under this section except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation. Probation may be eliminated or the term decreased without a hearing.

42 Pa.C.S.A. § 9771 (effective to December 17, 2019).

As is relevant to the current appeal, the following principles may be gleaned from both the plain language of the above statutes and from our Supreme Court's interpretation of the statutes. First, when sentencing a defendant, the trial court is authorized to enter an "order of probation" and the court may impose this order of probation "consecutively or concurrently." 42 Pa.C.S.A. § 9721(a).

Second, the trial court "may as a condition of its order" require the defendant to comply with certain, specific conditions of probation. 42 Pa.C.S.A. § 9754. Further, the Pennsylvania Supreme Court has held that a "general condition" of any order of probation is "that the defendant lead a law-abiding life, *i.e.*, that the defendant refrain from committing another crime." ***Commonwealth v. Foster***, 214 A.3d 1240, 1250 (Pa. 2019) (quotations and citations omitted).

Third, the trial court "may at any time terminate continued supervision or lessen or increase the conditions upon which an order of probation has been imposed." 42 Pa.C.S.A. § 9771(a). However, the trial court may only "revoke an order of probation upon proof of the violation of specified conditions of the probation." 42 Pa.C.S.A. § 9771(b). Thus, as our Supreme Court has explained, under the plain language of the statute:

> [o]nly upon the violation of any of the 'specified conditions' in the probation order (general or specific) may a court revoke the defendant's probation. In other words, a court may find a defendant in violation of probation only if the defendant has violated one of the 'specific conditions' of

probation included in the probation order or has committed a new crime.

**Foster**, 214 A.3d at 1250.

The question in this case concerns when "the 'specified conditions' in the probation order" become active and enforceable against the defendant.

For over forty years, three-judge panels of this Court have held that a defendant may prospectively violate the conditions of a probationary order by committing a new crime after sentencing, but before the commencement of their probationary period. This line of precedent began with **Commonwealth v. Wendowski**, 420 A.2d 628 (Pa. Super. 1980).

In **Wendowski**, Mr. Wendowski was convicted of a variety of crimes and sentenced to serve a term of imprisonment, followed by a term of probation. When Mr. Wendowski was on parole, he pleaded guilty to a new offense. As a result, the trial court revoked Mr. Wendowski's probation, even though his probationary term had not yet begun. **Id.** at 629. Mr. Wendowski appealed to this Court and claimed that, "since he was not actually serving the probation . . . on the day it was revoked, the revocation was an unconstitutional augmentation of [his] sentence." **Id.** We held that Mr. Wendowski's claim failed.

In analyzing Mr. Wendowski's claim, we held that, "for revocation purposes," the phrase "term of probation" must "include[e] the term beginning at the time probation is granted." **Id.** at 630, quoting **Wright v. United States**, 315 A.2d 839, 841-842 (D.C.App. 1974). The **Wendowski** Court did not cite any statutory language to support this proposition. Instead,

- 11 -

we held that public policy required this broad definition because, "[o]therwise, having been granted probation a defendant could commit criminal acts with impunity – as far as revocation of probation is concerned – until he commenced actual service of the probationary period."  **Wendowski**, 420 A.2d at 630, *quoting* **Wright**, 315 A.2d at 841-842.

The **Wendowski** Court then quoted a concurring opinion from Judge Curtis Waller, of the United States Court of Appeals for the Fifth Circuit, and held:

> If, at any time before the defendant has completed the maximum period of probation, or before he has begun service of his probation, he should commit offenses of such nature as to demonstrate to the court that he is unworthy of probation and that the granting of the same would not be in subservience to the ends of justice and the best interests of the public, or the defendant, the court could revoke or change the order of probation.  A defendant on probation has no contract with the court.  He is still a person convicted of crime, and the expressed intent of the Court to have him under probation beginning at a future time does not change his position from the possession of a privilege to the enjoyment of a right.

**Wendowski**, 420 A.2d at 630, *quoting* **James v. United States**, 140 F.2d 392, 394 (5th Cir. 1944) (Waller, J., concurring) (quotations and citations omitted).

The **Wendowski** Court thus held that the trial court properly revoked Mr. Wendowski's probation for committing a new crime, even though Mr.

Wendowski's probationary period had not yet commenced at the time he committed the crime.[4] ***Wendowski***, 420 A.2d at 630.

---

[4] In support of its holding, the ***Wendowski*** Court cited the Pennsylvania Supreme Court's opinion in ***Commonwealth v. Vivian***, 231 A.2d 301 (Pa. 1967). In ***Vivian***, Mr. Vivian was sentenced to serve five years of probation in one case and "one year's probation in each [of four other cases, with] . . . [a]ll periods of probation [] run consecutively." ***Id.*** at 305. One of the conditions of Mr. Vivian's probation "was that [he] would be examined immediately by a psychiatrist and that [the psychiatrist] recommend that probation was a proper and safe procedure." ***Id.*** at 306. Nine days later, Mr. Vivian again appeared before the trial court. At this hearing, the trial court received reports from psychiatrists who "strongly opposed" probation for Mr. Vivian. "After a consideration of these findings," the trial court concluded that Mr. Vivian had failed to meet the condition that a psychiatrist "recommend that probation [is] a proper and safe procedure." ***Id.*** at 306. Therefore, the trial court "change[d] its order of probation and impose[d] a prison sentence" on all of Mr. Vivian's probationary terms. ***Id.***

Mr. Vivian appealed and claimed that his new sentence violated "the proscription against double jeopardy included in the Fifth Amendment to the United States Constitution." ***Id.*** The Pennsylvania Supreme Court held that, since Mr. Vivian failed to meet the initial condition that "a psychiatrist . . . recommend that probation was a proper and safe procedure . . . , the trial court in its discretion had the right to change its order of probation and impose a prison sentence without violating the proscription against double jeopardy." ***Id.***

It is true that, in ***Vivian***, the trial court revoked a term of probation that Mr. Vivian was then serving and four other probationary terms that Mr. Vivian had not yet begun to serve. Further, the Pennsylvania Supreme Court affirmed Mr. Vivian's judgment of sentence. However, our Supreme Court's opinion in ***Vivian*** did not compel ***Wendowski's*** holding, nor does it compel ours. To be sure, Mr. Vivian did not raise – and the Supreme Court did not review – any specific claim related to whether the trial court had the authority to revoke a probationary term that not yet commenced. The issue was simply not before the Court. ***See Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Labor & Indus.***, 162 A.3d 384, 394 (Pa. 2017) ("what is actually decided and controlling is the law applicable to the particular facts of that particular case") (quotations and citations omitted). Certainly, the ***Wendowski*** Court was well
*(Footnote Continued Next Page)*

This Court followed **Wendowski's** holding in the intervening years. **See Commonwealth v. Dickins**, 475 A.2d 141, 144 (Pa. Super. 1984) (following **Wendowski** and holding that "[t]he fact that appellant had not commenced serving probation when the new [criminal] offense occurred did not prevent the court from revoking its prior order placing appellant on probation. . . . If the new offense is committed at any time before the maximum period of probation has been completed, probation may be revoked"); **Commonwealth v. Miller**, 516 A.2d 1263, 1265 (Pa. Super. 1986) (holding that **Wendowski** and **Dickens** were correctly decided because "[t]o suggest, as appellant does, that a defendant is free to commit unlimited additional crimes without in any way impairing or endangering a previously imposed sentence of probation merely because the probationary period has not commenced is to suggest an absurdity in the statute which this Court is not prepared to create"), *appeal denied*, 528 A.2d 956 (Pa. 1987); **Commonwealth v. Ware**, 737 A.2d 251, 253 (Pa. Super. 1999) (following **Wendowski** and **Dickens** and holding "the court had the authority to revoke appellant's probation despite the fact that, at the time of revocation of probation, appellant had not yet begun to serve the probationary portion of her split sentence and even though the [criminal] offense upon which revocation of probation was based occurred during the

---

aware of the fact that **Vivian** did not bind its hands – the **Wendowski** Court specifically declared that the issue of whether a court may anticipatorily revoke a defendant's probation "has not been directly dealt with by our appellate courts." **Wendowski**, 420 A.2d at 630.

- 14 -

parole period and not the probationary period"), *appeal denied*, 747 A.2d 900 (Pa. 1999); ***Commonwealth v. Castro***, 856 A.2d 178, 180 n.1 (Pa. Super. 2004) ("[the defendant] was found in violation of his parole, which he was serving at the time of his arrest, and in anticipatory violation of his probation, which had not yet begun to run. Such a finding is proper"); ***Commonwealth v. Mitchell***, 955 A.2d 433, 435 n.2 (Pa. Super. 2008) ("[u]nder Pennsylvania law, an order of probation can be changed or revoked if, at any time before the defendant has completed the maximum period of probation, or before he has begun service of his probation the defendant commits offenses or otherwise demonstrates he is unworthy of probation. . . . Here, [the defendant] had not yet begun to serve his probationary sentence when he committed new criminal offenses. Nevertheless, these new offenses rendered [the defendant] subject to revocation of probation and re-sentencing"), *appeal denied*, 964 A.2d 894 (Pa. 2009).

To the extent any of the above cases cited to the relevant statutes, the statutory discussion and interpretation was minimal – which is, obviously, understandable, given that ***Wendowski*** constituted clear, binding precedent for all of the petite panels adjudicating the foregoing appeals. ***Commonwealth v. Taggert***, 997 A.2d 1189, 1201 n.16 (Pa. Super. 2010) ("one three-judge panel of [the Superior] Court cannot overrule another" three-judge panel).

We further note that, in ***Commonwealth v. Hoover***, 909 A.2d 321 (Pa. Super. 2006), this Court expanded ***Wendowski's*** holding to cover a situation

where the trial court prospectively revoked the defendant's probation for "a violation of a work release rule" – and not for the commission of a new crime. *Hoover*, 909 A.2d at 324. *Hoover* held that the trial court acted properly because:

> [a]lthough [the defendant] herein did not, strictly speaking, violate the law by becoming intoxicated, he clearly violated the terms of his work release and "demonstrate[d] to the court that he is unworthy of probation and that the granting of the same would not be in subservience to the ends of justice [or] the best interests of the public."

*Id.*;[5] *see also Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000) (declaring: "we note that [the defendant] does not dispute that the sentencing court had the authority to revoke her probation despite the fact that she was on parole at the time [she committed the alleged technical probation violations] and had not yet begun her probationary term. Indeed, it is clear that the court has this power"); *Commonwealth v. Allshouse*, 33 A.3d 31, 39 (Pa. Super. 2011) (holding that the trial court was authorized to prospectively revoke the defendant's probation for "a technical violation"

---

[5] In holding that revocation is proper where a defendant "demonstrate[s] to the court that he is unworthy of probation," the *Hoover* Court further departed from the relevant statutory text. Simply stated, a probation violation can only occur where the defendant violates the "specified conditions" of his or her probation. 42 Pa.C.S.A. § 9771(b) ("[t]he court may . . . revoke an order of probation **upon proof of the violation of specified conditions of the probation**") (emphasis added); *Foster*, 214 A.3d at 1250 ("[w]e find the language of the pertinent statutory provisions to be clear and unambiguous. . . . Only upon the violation of any of the 'specified conditions' in the probation order (general or specific) may a court revoke the defendant's probation").

because, "[a]s in *Wendowski*, [the defendant's] probation was revoked prior to its commencement on the basis that [the defendant] was a danger to society and, therefore, unworthy of probation"), *appeal denied*, 49 A.3d 441 (Pa. 2012).

On appeal, Appellant asks this Court to overrule *Wendowski* and its progeny, as those cases "cannot bear scrutiny when examined in light of the relevant statutes that are controlling on the issue of whether a consecutively imposed term of probation may be revoked for conduct while the defendant is not on probation." Appellant's Brief at 11. Of note, Appellant argues that, at sentencing, 42 Pa.C.S.A. § 9721(a) authorized the trial court to enter an order of probation and to impose that order "consecutively or concurrently." *See* Appellant's Brief at 16. Appellant points out, however, "[t]here is no authority to impose a sentence that is both concurrent and consecutive to another sentence." *Id.* at 17 (emphasis omitted).

In this case, the trial court specifically imposed Appellant's order of probation consecutive to a term of imprisonment. Further, Appellant committed new criminal offenses, and was convicted of the new criminal charges, while he was on parole in this case and before his term of probation commenced. Appellant argues that, under the plain language of our statutes, he could not have violated a "specified condition" of his probation before his probationary period actually began. For this reason, Appellant asserts that the trial court lacked statutory authority to revoke his probation. Appellant also argues that, to the extent the trial court amended his original order of

probation to run concurrently, rather than consecutively, his resulting sentence is illegal, as the trial court did not have jurisdiction to modify his sentence beyond 30 days after imposition. *Id.* at 24-25.

The Commonwealth, on the other hand, argues that *Wendowski* was properly decided. Specifically, the Commonwealth argues, *Wendowski* correctly concluded that the term "probation," as used in the revocation statute, was ambiguous and that, "for revocation purposes, 'probation' had been defined through practice and persuasive authority as beginning when the probationary term is imposed, not when it begins to run." Commonwealth's Brief at 12.

The Commonwealth also argues that the doctrine of *stare decisis* and the presumption of legislative acquiescence support upholding *Wendowski*. With respect to the doctrine of *stare decisis*, the Commonwealth notes that this Court has followed *Wendowski* for over forty years and we should, obviously, "hesitate to overturn forty years of settled case law." *Id.* at 18. Further, as to the presumption of legislative acquiescence, the Commonwealth notes that, during the forty years following *Wendowski*, the General Assembly has amended the probation revocation statute twice, "with no rejection of [*Wendowski's*] interpretation" of the statute. Thus, the Commonwealth claims, there is a statutory presumption that *Wendowski's* interpretation "was in accordance with the legislative intent; otherwise the General Assembly would have changed the law in a subsequent amendment." *Id.* at 16 (quotations and citations omitted).

We conclude that the holding of **Wendowski** and its progeny contravene the plain language of the relevant statutes. As such, **Wendowski** and its progeny are overruled.

As noted above, when sentencing a defendant, Section 9721(a) authorizes a trial court to enter an "order of probation;" the section declares that the court may impose this order of probation "consecutively or concurrently." 42 Pa.C.S.A. § 9721(a). During sentencing in the case at bar, the trial court entered an order of probation and imposed that order consecutively to a term of total confinement. **See** Sentencing Order, 12/18/17, at 1-2. The word "consecutive" plainly means "one after the other." **See** 6 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 26.3(f). Thus, under the plain language of the sentencing order, Appellant was required to serve his entire term of total confinement before he began to serve his probationary term. Yet, when Appellant committed the new crimes that served as the basis for his probation revocation, he was still on parole and had not yet begun to serve his period of probation. **See Hudson v. Pa. Bd. of Prob. & Parole**, 204 A.3d 392, 396 (Pa. 2019) ("the actual sentence of a prisoner subject to total confinement is his maximum sentence, and his minimum sentence merely sets the time after which he is eligible to serve the remainder of his sentence on parole").

Section 9771(b) permits revocation of an order of probation "upon proof of the violation of specified conditions of the probation." 42 Pa.C.S.A.

- 19 -

§ 9771(b). However, the "specified conditions" of Appellant's probation did not commence before Appellant began to serve his probationary sentence.

With respect to the conditions of probation, Section 9754 declares that the trial court "may as a condition of its order" of probation require the defendant to comply with certain, specific conditions of probation. 42 Pa.C.S.A. § 9754. Under our Supreme Court's precedent, a "general condition" of any order of probation is "that the defendant lead a law-abiding life, *i.e.*, that the defendant refrain from committing another crime." ***Foster***, 214 A.3d at 1250 (quotations and citations omitted). Thus, under Section 9754, every condition of probation – whether "specific" or "general" – attaches to, or is a part of, the order of probation. ***See id.*** ("[o]nly upon the violation of any of **the 'specified conditions' in the probation order (general or specific)** may a court revoke the defendant's probation") (emphasis added). And, if the "order of probation" is imposed "consecutively" to a term of imprisonment, the "order of probation" and the conditions of that order cannot take effect until the term of imprisonment ends. This view is mandated by the plain language of the statutes. Indeed, any other view is statutorily untenable.

First, it cannot be argued that the "specified conditions" in an order of probation attach to a term of imprisonment. To be sure, the plain terms of Section 9754 only permit the trial court to attach "conditions of probation" to an "order of probation." ***See*** 42 Pa.C.S.A. § 9754(c) ("[t]he court may **as a condition of its order** require the defendant . . .") (emphasis added).

Nothing in the Sentencing Code permits a trial court to attach conditions of probation to a term of total confinement. *See* 42 Pa.C.S.A. § 9756 (imposition of a sentence of total confinement); *see also Commonwealth v. Thier*, 663 A.2d 225 (Pa. Super. 1995) (holding that the trial court could not impose a condition of probation upon the defendant, as "[n]o probationary sentence was imposed in the present case"). Further, as to the "general condition" that the defendant "refrain from committing another crime," our Supreme Court has declared that this, too, is a part of the order of probation. *Foster*, 214 A.3d at 1250 ("[o]nly upon the violation of any of the 'specified conditions' **in the probation order** (general or specific) may a court revoke the defendant's probation") (emphasis added).

Second, under our statutes, no part of the trial court's order of probation could have commenced during Appellant's term of imprisonment or parole. Certainly, Section 9721(a) declares that a trial court may enter an "order of probation" at sentencing and may impose this "order of probation" "consecutively or concurrently." 42 Pa.C.S.A. § 9721(a). Under the plain language of Section 9721(a), when the trial court imposed Appellant's order of probation consecutively, the entirety of Appellant's order of probation was imposed consecutively.

Moreover, nothing in the Sentencing Code permits a consecutive order of probation to be aggregated with a sentence of total confinement.[6] Rather, 42 Pa.C.S.A. § 9757 – regarding aggregation of sentences – only applies to "consecutive sentences of total confinement." 42 Pa.C.S.A. § 9757 (emphasis added).[7] An order of probation is, obviously, not a sentence of "total confinement." **See** 42 Pa.C.S.A. § 9721(a) (distinguishing between "[a]n order of probation" and "[t]otal confinement"); **see also Commonwealth v. Kates**, 305 A.2d 701, 708 (Pa. 1973) ("the basic objective of probation is to provide a means to achieve rehabilitation without resorting to incarceration");

_____

[6] Aggregation of sentences is:

> the combining of multiple consecutive sentences of total confinement and treating them as if they were a single sentence. The minimum sentences are added together to arrive at an aggregated minimum sentence while the maximum sentences are added together to arrive at an aggregated maximum sentence.

12 West's Pa. Prac., Law of Probation & Parole § 4:9 (3d ed.).

[7] 42 Pa.C.S.A. § 9757, entitled "[c]onsecutive sentences of total confinement for multiple offenses," declares:

> Whenever the court determines that a sentence should be served consecutively to one being then imposed by the court, or to one previously imposed, the court shall indicate the minimum sentence to be served for the total of all offenses with respect to which sentence is imposed. Such minimum sentence shall not exceed one-half of the maximum sentence imposed.

42 Pa.C.S.A. § 9757.

*Commonwealth v. Ostrosky*, 866 A.2d 423, 430 (Pa. Super. 2005) ("[t]he maxim, *expressio unius est exclusio alterius*, establishes the inference that, where certain things are designated in a statute, all omissions should be understood as exclusions") (quotations and citations omitted). Therefore, under the Sentencing Code, a sentence of total confinement and a consecutive order of probation may not be aggregated and viewed as one.

Simply stated, **Wendowski** was incorrect in holding that a trial court may anticipatorily revoke an order of probation and in reasoning that "a term of probation may and should be construed for revocation purposes as including the term beginning at the time probation is granted." **Wendowski**, 420 A.2d at 630 (quotations omitted). No statutory authority exists to support this understanding. Rather, the plain language of the relevant statutes provides that: a trial court may only revoke an order of probation "upon proof of the violation of specified conditions of the probation;" the "specified conditions" of an order of probation are attached to, or are a part of, the order of probation; and, when the trial court imposes an "order of probation" consecutively to another term, the entirety of the "order of probation" – including the "specified conditions" – do not begin to commence until the prior term ends.[8]

_____

[8] Our plain reading of the statute is bolstered by the definitions of "violation," "technical violation," and "conviction violation" in the Resentencing Guidelines. The Resentencing Guidelines define these terms as follows:

*(Footnote Continued Next Page)*

- 23 -

---

"Violation." A finding by a court of record, following a hearing, that the offender **failed to comply with terms and conditions of an order of probation**.

"Technical violation." **Failure to comply with the terms and conditions of an order of probation**, other than by the commission of a new offense of which the offender is convicted in a court of record.

"Conviction violation." **Commission of a new offense during the period of probation**, resulting in a conviction for a misdemeanor or felony in a court of record, whether or not [judgment] of sentence has been imposed.

204 Pa.Code § 307.1 (emphasis added) (effective January 1, 2021).

The Resentencing Guidelines were adopted by the Pennsylvania Commission on Sentencing ("the Commission") and were "not enacted as part of" the Judicial Code. *See id.* at cmt. Nevertheless, the General Assembly mandated that the Commission adopt guidelines for resentencing and the General Assembly further declared that the Resentencing Guidelines "shall be considered by the [trial] court when resentencing an offender following revocation of probation." 42 Pa.C.S.A. § 2154.4. Moreover, although the Resentencing Guidelines took effect after the relevant events in the case at bar, the above definitions provide further clarity that, under the plain language of the statutes, the "specified conditions" of probation do not commence until the defendant has begun to serve his period of probation. Indeed, regarding a violation of the "specific conditions" of probation, the Resentencing Guidelines clarify that the conditions are attached to the "order of probation;" and, as explained above, at sentencing, the trial court must impose the entire "order of probation" "consecutively or concurrently." *See* 42 Pa.C.S.A. § 9721(a). Further, regarding the "general condition" that "the defendant refrain from committing another crime," the Resentencing Guidelines clarify that a probation violation can only occur when the "[c]omission of [the] new offense" occurs "**during the period of probation**." 204 Pa.Code § 307.1 (emphasis added).

- 24 -

Notwithstanding the plain language of the statutes, the Commonwealth argues that the statutory presumption of legislative acquiescence favors upholding **Wendowski**. According to the Commonwealth:

> The General Assembly has been on notice of this Court's interpretation of § 9771 for decades and, despite amending the statute twice in that time, has never changed the operative language of the statute. It is well-established that "[t]he failure of the General Assembly to change the law which has been interpreted by the courts creates a presumption that the interpretation was in accordance with the legislative intent; otherwise the General Assembly would have changed the law in a subsequent amendment." **Fonner v. Shandon, Inc.**, 724 A.2d 903, 906 (Pa. 1999).

Commonwealth's Brief at 16.

The Commonwealth's argument fails. As explained above, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). "[A]s a general rule, the best indication of legislative intent is the plain language of a statute." **Shiffler**, 879 A.2d at 189 (quotations and citations omitted). Nevertheless, the rules of construction list certain, non-exclusive presumptions that "may be used" to ascertain legislative intent. 1 Pa.C.S.A. § 1922. One of these presumptions is legislative acquiescence. The statute declares:

> In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:
>
> . . .

> (4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.

1 Pa.C.S.A. § 1922.

*Wendowski* was issued by a three-judge panel of this Court – not "a court of last resort." Nevertheless, in *In re Estate of Lock*, 244 A.2d 677 (Pa. 1968), the Pennsylvania Supreme Court extended the presumption of legislative acquiescence to certain opinions from this Court. The Supreme Court declared:

> where a decision of the Superior Court construing a statute was never modified by the Supreme Court, the presumption was that when the legislature subsequently enacted a similar statute dealing with the same subject matter, the legislature intended the same construction to be placed on the language of the subsequent statute.

*In re Estate of Lock*, 244 A.2d at 683.

Even though the presumption of legislative acquiescence extends to Superior Court opinions, "[a]pplication of [the] presumption is discretionary, not mandatory." *Commonwealth v. Small*, 238 A.3d 1267, 1285 (Pa. 2020); 1 Pa.C.S.A. § 1922 ("[i]n ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions . . . **may** be used") (emphasis added). Further, our Supreme Court has explained that the underlying rationale for applying the presumption of legislative acquiescence is far weaker when dealing with Superior Court precedent, as the presumption rests upon a rather dubious supposition. The Supreme Court explained:

This extension of § 1922(4) beyond its terms to encompass lines of Superior Court precedent [the Pennsylvania Supreme Court] has yet to disturb would seem to hinge at least in part on the idea that [the Supreme Court's] decision not to review such cases is, itself, a form of acquiescence. But as [the Supreme Court's] then-Justice Samuel J. Roberts once observed, "A denial [of *allocatur*] may merely reflect that the particular controversy was not the proper vehicle for deciding a question of law or that it was not presented in the proper posture." Hon. Samuel J. Roberts, *Foreword, Pennsylvania Supreme Court Review*, 1980, 54 TEMPLE L.Q. 403, 407 (1981); ***cf. Commonwealth v. Tilghman***, 673 A.2d 898, 904 (Pa. 1996) ("[A] dismissal [of a petition for allowance of appeal] as being improvidently granted has the exact same effect as if [the Supreme Court] had denied the petition for allowance of appeal (*allocatur*) in the first place. Where [the Supreme Court dismisses] an appeal as improvidently granted, the lower tribunal's opinion and order stand as a decision of that court and [the Supreme Court's] order has no precedential value").

***Commonwealth v. Dickson***, 918 A.2d 95, 107 n.14 (Pa. 2007) (emphasis and explanatory phrase omitted); ***see also Dickson***, 918 A.2d at 110 (Cappy, C.J., concurring) (agreeing with footnote 14 from the opinion and explaining: "***Estate of Lock's*** presumption regarding legislative intent hinges on the existence of an intermediate court decision which has not been modified by [the Supreme] Court. As noted by the Majority, this approach fails to appreciate that [the Supreme Court's] denial of *allocatur* of an intermediate court decision is not an endorsement of or rejection of the intermediate appellate court's decision").

***Wendowski*** held that a court may anticipatorily revoke an order of probation when the defendant commits a new crime after sentencing, but before the period of probation has begun. As explained above, this holding

finds no support in our statutes and is contrary to the plain language of Sections 9721, 9754, and 9771 of the Sentencing Code.  Thus, to paraphrase our Supreme Court in **Dickson**:  "[t]hat we have declined, until now, to address [**Wendowski** and its progeny] on this issue, while perhaps regrettable, cannot be used as a brickbat to prevent us from bringing the decisional law of this Commonwealth into line with the plain language of" the statutes.  **Dickson**, 918 A.2d at 108.[9]  Here, since **Wendowski** and its progeny are contrary to the plain language of the statutes, we follow **Dickson** and decline to apply the discretionary presumption of legislative acquiescence. Moreover, since **Wendowski** and its progeny are contrary to the plain language of the relevant statutes, we overrule **Wendowski** and its progeny.

---

[9] For like reasons, the Commonwealth's appeal to the doctrine of *stare decisis* must fail.  We again paraphrase our Supreme Court in holding:

> As for our precedent, we do not take lightly the decision to depart therefrom. But *stare decisis* has its limits. While "*stare decisis* serves invaluable and salutary principles, it is not an inexorable command to be followed blindly when such adherence leads to perpetuating error." **Stilp v. Commonwealth**, 905 A.2d 918, 967 (Pa. 2006). Indeed, particularly when this Court's prior cases have "distorted the clear intention of the legislative enactment and by that erroneous interpretation permitted the policy of that legislation to be effectively frustrated," this Court has "no alternative but to rectify our earlier pronouncements and may not blindly adhere to the past rulings out of a deference to antiquity." **Mayhugh v. Coon**, 331 A.2d 452, 456 (Pa. 1975).

**Small**, 238 A.3d at 1287.

We, thus, vacate Appellant's judgment of sentence and remand this case "with instructions to reinstate the original order of probation." ***Commonwealth v. Griggs***, 461 A.2d 221, 225 (Pa. Super. 1983).[10]   As a final matter, with respect to the revocation of Appellant's parole, since the trial court revoked

---

[10] The learned concurring and dissenting opinion declares that we have engaged in an "overly-strict interpretation" of 42 Pa.C.S.A. § 9771(b) because we have held that "revocation is sanctioned only 'upon proof of the violation of specified conditions of probation.'" ***See*** Concurring and Dissenting Opinion at *7, *citing* 42 Pa.C.S.A. § 9771(b).  Further, the opinion declares that our view "ignores § 9754(b), which our Supreme Court has held provides additional grounds for revoking a defendant's probation." ***Id.*** at *6, *citing* ***Foster***, 214 A.3d at 1250.  Respectfully, we believe the concurring and dissenting opinion is mistaken.

At the outset, as explained above, the plain statutory language of Section 9771(b) only permits revocation of an order of probation upon "proof of the violation of specified conditions of the probation." ***See*** 42 Pa.C.S.A. § 9771(b) ("[t]he court may revoke an order of probation upon proof of the violation of specified conditions of the probation").  Second, we have not ignored the fact that Section 9754(b) establishes a "general condition of probation – that the defendant lead 'a law-abiding life,' *i.e.*, that the defendant refrain from committing another crime." ***See Foster***, 214 A.3d at 1250.

To clarify, there is a difference between "specified conditions" of probation and "specific conditions" of probation.  As explained in ***Foster***, the "specified conditions" of probation are composed of:  1) the "general condition . . . that the defendant refrain from committing another crime" and 2) the "specific conditions" that the court imposes "from the list enumerated in section 9754(c)." ***Foster***, 214 A.3d at 1250.  And, under the plain statutory language of Section 9771(b), "[o]nly upon the violation of any of the 'specified conditions' in the probation order (general or specific) may a court revoke the defendant's probation." ***Id.***  Moreover, as we have explained, since the "specified conditions" of an order of probation are attached to, or are a part of, the order of probation, when the trial court imposes an "order of probation" consecutively to another term, the entirety of the "order of probation" – including the "specified conditions" – cannot begin to commence until the prior term ends. ***See supra*** at **22-23.

Appellant's parole and illegally resentenced Appellant to serve a new term of incarceration, we must also remand for resentencing. ***Commonwealth v. Mitchell***, 632 A.2d 934, 936 (Pa. Super. 1993) ("the order revoking parole does not impose a new sentence; it requires appellant, rather, to serve the balance of a valid sentence previously imposed. Moreover, such a recommittal is just that – a recommittal and not a sentence. Further, at a 'violation of parole' hearing, the court is not free to give a new sentence") (citations and some capitalization omitted).

Judgment of sentence vacated. Case remanded with instructions to reinstate the original order of probation and for resentencing. Jurisdiction relinquished.

President Judge Emeritus Bender, Judge Lazarus, Judge Dubow and Judge McCaffery join this Opinion.

Judge Kunselman files a Concurring Opinion in which Judge Lazarus, Judge Dubow and Judge McCaffery join.

Judge Bowes files a Concurring and Dissenting Opinion in which Judge Murray joins.

Judge Shogan did not participate in the consideration or decision of this matter.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: _8/18/2021_