J-A11043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GREGORY BLAIR | : | |
| | : | |
| Appellant | : | No. 514 EDA 2021 |

Appeal from the Judgment of Sentence Entered February 4, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008901-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GREGORY BLAIR | : | |
| | : | |
| Appellant | : | No. 515 EDA 2021 |

Appeal from the Judgment of Sentence Entered February 4, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006086-2018

BEFORE: BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED SEPTEMBER 21, 2022**

Gregory Blair appeals from the judgment of sentence entered after he was found in violation of his parole ("VOP"). He challenges the court's premature revocation of his probation and evidence introduced by the Commonwealth at his sentencing hearing. We vacate the judgment of sentence and remand for further proceedings pursuant to **Commonwealth v. Simmons**, 262 A.3d 512 (Pa.Super. 2021) (*en banc*).

In March 2020, Blair pled guilty to charges arising from his actions against his girlfriend at the time. He pleaded guilty to strangulation, possession of an instrument of crime, simple assault, and recklessly endangering another person,[1] terroristic threats, stalking, and intimidation of a witness.[2] The court sentenced Blair to 11½ to 23 months' incarceration with immediate parole, followed by a consecutive term of five years' probation. A condition of his parole was that he have no contact with the victim.

Blair was brought before the court again on November 23, 2020, on allegations that he was in violation for contacting the victim. The victim testified that she believed Blair had contacted her through an application ("app") called "OfferUp," where they had initially met. *See* N.T., VOP Hearing, 11/23/20, at 8, 11, 12, 13. OfferUp allows users to buy and sell furniture. *Id.* at 8.

The victim testified that her profile name on the app is "Coca Cola" and her profile picture is a picture of sneakers. *Id.* at 19-20. She testified that while she was dating Blair, her profile name was the same, but the profile picture was a picture of herself. *Id.* at 20. The victim testified that Blair contacted her on the app from October 31, 2020, to November 2, 2020, inquiring about furniture that she was selling on the app. *Id.* at 11. She

---

[1] 18 Pa.C.S.A. §§ 2718, 907, 2701, and 2705, respectively. These charges were at docket number 6086-2018.

[2] 18 Pa.C.S.A. §§ 2706, 2709.1, and 4952, respectively. These charges were at docket number 8901-2019.

testified that she was contacted by an account that had the name "Gregory," which is Blair's first name, but did not have a photograph. *Id.* at 13. The account listed the account holder's location as Maryland. *Id.* at 14. The victim stated that she believed this account belonged to Blair because of "[h]is tone. He started becoming impatient with not responding right away[.]" *Id.* at 17. She also testified that she believed it was Blair because the conversations reflected his behavior when they were in a relationship.

> [Victim]: With the, Hello, Hello, Hello. And that's him. He becomes very impatient if you don't answer him right away. And that's when I started making the connection.
>
> [Commonwealth]: And you said that's him and that was consistent with his behavior. Is that based on behavior that you observed during your romantic relationship with [Blair]?
>
> [Victim]: Yes

*Id.* at 18.

She said that another account also reached out to her with the name of "Greg Blair." *Id.* at 12. The account had a picture of Blair wearing a hat bearing the logo of the Philadelphia public transportation system, SEPTA. She testified that she blocked this account. *Id.* at 17. The Commonwealth also introduced copies of screenshots of the messages. *See id.* at 11.

The trial court found that the Commonwealth had proven that Blair had violated his parole. Regarding the account that listed the name Gregory, the court stated, "I would not be surprised if the first Gregory was also him." *Id.*

at 30. The trial court revoked Blair's parole and probation. It sentenced Blair at a later hearing to a total of 10 to 20 years' incarceration.

Blair filed a post-sentence motion that the court granted in part. At a hearing, the court first considered resentencing Blair to back time for the parole violation with an additional sentence for the probation violation. *See* N.T., Hearing, 2/4/21, at 20. However, after the court clerk said she was "confused," the court determined it would revoke parole and impose new sentences for the probation violations. *Id.* at 21. The court stated that the new sentences were "just as well as back time because it gets too confusing." *Id.* at 22. The court thus imposed a new aggregate sentence of seven to 15 years' incarceration. This timely appeal followed.[3]

Blair raises the following issues:

1. Did not the trial court lack authority under Pennsylvania law to revoke consecutive sentences of probation that [Blair] had not yet begun to serve?

2. Was not the evidence insufficient to prove that [Blair] violated the conditions of his parole/probation where the evidence failed to prove the identity of the person who contacted the complainant?

3. Did not the trial court err by improperly permitting the presentation of evidence at sentencing to prove [Blair's] parole/probation violation where the court had already found [Blair] in violation of probation/parole?

4. Did not the trial court err by admitting evidence at sentencing to prove [Blair's] parole/probation violation

---

[3] Blair filed his notice of appeal from the February 4, 2021 order on March 8, 2021. Nonetheless the appeal is timely because the 30 day deadline fell on a Saturday. *See* Pa.R.A.P. 903(a); 1 Pa.C.S.A. § 1908.

> where that evidence consisted of hearsay and was not properly authenticated?

Blair's Br. at 5.

Blair first asserts that the trial court did not have the authority to revoke his probation as an exercise of its discretion. He notes that recently our Court held that a trial court may not anticipatorily revoke an order of probation. ***See Simmons***, 262 A.3d at 523. He argues that since he had not yet begun serving the probationary portion of his sentence, the court erred by anticipatorily revoking his probation. The Commonwealth and trial court agree and ask us to remand for resentencing. We will do so.

Blair's challenge to the court's ability to anticipatorily revoke his probation raises a challenge to the legality of the sentence. ***Simmons***, 262 A.3d at 515. As such, our standard of review is *de novo,* and our scope is plenary. ***Commonwealth v. Cardwell***, 105 A.3d 748, 750 (Pa.Super. 2014).

At the time the trial court found Blair in violation of parole and probation, and at the time of Blair's sentencing and resentencing, this Court's precedents held that a trial court could anticipatorily revoke a defendant's probation. ***See Commonwealth v. Wendowski***, 420 A.2d 628, 630 (Pa.Super. 1980). However, six months after the trial court resentenced Blair, this Court rendered an *en banc* decision in ***Simmons*** overruling these precedents. ***See Simmons***, 262 A.3d at 523.[4] We concluded that a court cannot anticipatorily

---

[4] Our Supreme Court granted allowance of appeal in ***Commonwealth v. Rosario***, 271 A.3d 1285 (Pa. 2022), to review the ***Simmons*** decision.

- 5 -

revoke a defendant's probation when the defendant has allegedly violated probation while serving parole. As that is what happened here, we must find in Blair's favor regarding the court's authority to anticipatorily revoke probation.

In view of the court's comments at the resentencing hearing regarding whether to fashion a sentence composed of back time for the parole violation plus new sentences for the probation violation, we conclude our disposition has disturbed the trial court's sentencing scheme. We therefore vacate and remand for resentencing.

Next, Blair claims that there was insufficient evidence to support the court's revocation of his parole. Specifically, Blair claims that the evidence presented of the violation was speculative at best. He notes that there were two pieces of evidence of his alleged violation: "1) the complainant's belief that Gregory from Maryland had an 'impatient tone' which she associated with [Blair]" and "2) the assertion that it was [Blair] that made the inquiry from the account associated with the name Greg Blair with [Blair's] picture." Blair's Br. at 27. Blair also maintains this evidence is insufficient because there was no authentication of this information. He directs this Court to our decision in **Commonwealth v. Mangel**, 181 A.3d 1154 (Pa.Super. 2018).

We review a challenge to the sufficiency of evidence for a parole/probation violation by determining whether the Commonwealth has shown "by a preponderance of the evidence, that a parolee violated his parole." **Commonwealth v. Mitchell**, 632 A.2d 934, 936 (Pa.Super. 1993).

- 6 -

We view the evidence in the light most favorable to the Commonwealth. ***See Commonwealth v. Perreault***, 930 A.2d 553, 558 (Pa.Super. 2007).

Here, the evidence was sufficient based solely on the account that listed the name "Greg Blair" and had a picture of Blair wearing a SEPTA hat. Blair does not contest that at one point he worked for SEPTA nor does he contend that he goes by a different name. The evidence viewed in the light most favorable to the Commonwealth aligns with the court's conclusion that the account with Blair's picture belonged to Blair. The evidence was sufficient.

Blair's remaining issues go to sentencing. As we remand for resentencing, we do not address them.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2022