J-A12045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES CHARLES COLE | : | |
| | : | |
| Appellant | : | No. 852 WDA 2021 |

Appeal from the Judgment of Sentence Entered June 22, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0015767-2012

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED:  September 2, 2022**

Appellant, James Charles Cole, appeals from the judgments of sentence imposed following the second revocation of his probation in this case.  He challenges the discretionary aspects of his sentence that includes a term of two and one-half to seven years of state confinement, to be followed by two years of probation.  Upon review, we affirm the judgments of sentence and remand for the limited purpose of correcting an error on the sentencing order.

Initially in this matter, on March 18, 2013, Appellant pleaded guilty to two counts of indecent assault of a person less than thirteen years of age, and single counts of corruption of minors, unlawful conduct with a minor, and sale

_____

[*] Retired Senior Judge assigned to the Superior Court.

of a tobacco product to a minor.[1]  The facts underlying his plea involved his illicit pursuit a twelve-year-old girl, and were summarized as follows:

> Your Honor, if this case would have gone to trial, [A.Y.], a 12-year old child would have testified on November 15th 2012, the defendant approached her outside of her stepfather's apartment building.  She got into an argument with him and stepped out to cool off.
>
> He approached her, told her she had a nice body for a 12-year old, gave her a cigarette, told her he would go back to jail for her, that she was jailbait, and offered her a carton of cigarettes if she would have sex with him.
>
> He then grabbed her by the arm and tried to pull her into the house.  She broke away and went to the apartment.
>
> The following day, around 5:00 in the afternoon, she was walking away from her apartment to meet her mother at the Walmart. There is apparently a trail that goes behind her apartment.  He came running up from behind her, bit her on the left side of her neck, and tried to kiss her.  She told him to get off of her and started to walk and run away.
>
> He followed her, grabbed her butt, grabbed her breasts, and stuck his hand down her pants, and grabbed her rear end from behind, inside of her clothes.
>
> He continued to follow her to Route 30, at the pawn shop, where he tried to kiss her again.  She was able to push him away and ran toward her mother, and the police were called.

N.T. Guilty Plea Hearing, 3/18/13, 7-8.[2]

---

[1] 18 Pa.C.S. §§ 3126(a)(7), 6301(a)(1)(ii), 6318(a)(1), and 6305(a)(1), respectively.

[2] Factoring in Appellant's date of birth listed on his county court summary would permit the calculation that Appellant was twenty-three years old at the
*(Footnote Continued Next Page)*

Appellant entered his plea without an agreement on a sentencing recommendation. N.T. Guilty Plea Hearing, 3/18/13, 2. After bifurcation in order to request a presentence investigation report, the plea court sentenced him to an aggregate term of six to twelve months of imprisonment and ten years of probation. N.T. Sentencing Hearing, 10/3/13, 34-35; Sentencing Order, 10/3/13, 1-2. The aggregate sentence included the county imprisonment term and five years of probation on his first indecent assault count, a consecutive five-year probation term for his second indecent assault count, and concurrent five-year probation terms for corruption of minors and unlawful contact with a minor (to be served concurrent with the probation for the first count of indecent assault).[3] N.T. Sentencing Hearing, 10/3/13, 34-35; Sentencing Order, 10/3/13, 1-2. The first year of his probation was

_____

time of his underlying offenses. N.T. Guilty Plea Hearing, 3/18/13, 2 (Appellant identifying his age as "23" at the time of the plea hearing).

[3] We note that the Sentencing Guidelines recommended the following minimum imprisonment terms at Appellant's original sentencing hearing: six to fourteen months of imprisonment, plus or minus six months for aggravating or mitigating circumstances, for the two indecent assault counts and unlawful contact, and one to twelve months of imprisonment, plus or minus three months for aggravating or mitigating circumstances, for corruption of minors. 204 Pa. Code § 303.15 (offense listing; 6th ed. rev.) (providing offense gravity scores for the offenses); 204 Pa. Code § 303.16 (basic sentencing matrix; 6th ed. rev.); *see also* Pennsylvania Commission on Sentencing Guideline Sentence Forms 1-4, undated (indicating that Appellant had a prior record score of 1 and setting forth the applicable guideline ranges).

We also note that Appellant was initially subject to lifetime registration requirements as a sex offender. N.T. Sentencing Hearing, 10/3/13, 7-15. Based on subsequent legislation, Appellant was later reclassified as a ten-year registrant. Order, 4/19/18, 1.

designated to be served in a restrictive intermediate punishment program. *Id.*

After being paroled on October 28, 2013, Appellant had a compliance hearing after, *inter alia*, he violated a condition of his supervision to not wear clothing that falsely projected that he was an emergency responder, absconded from house arrest, accessed the internet, tested positive for two non-prescribed narcotics, and had disruptive conduct, including his acts of throwing a cellular phone in a toilet, using inappropriate names and racial slurs, and "roughhousing" with a fellow resident at his parole placement. N.T. 3/18/13 Sentencing Hearing, 21-23, 29-30; N.T. Compliance Hearing, 12/16/13, 3-4, 14-17, 20-23, 26, 30-33. The court detained him after hearing of those developments. *Id.* at 39. After the court was informed that there were no county housing options available for Appellant, N.T. Status Hearing, 2/24/14, 6-7, the court found him in technical violation of his supervision and revoked his probation. N.T. First Revocation Hearing, 3/24/14, 18-19. The court resentenced him to an aggregate term of twenty-four to seventy-two months of imprisonment to be followed by eleven years of probation. *Id.* at 19-20; Sentencing Order, 3/24/14, 1-2. The aggregate term consisted of twelve to thirty-six months of imprisonment and two years of probation for his first count of indecent assault, consecutive imprisonment and probation terms of twelve to thirty-six months and four years for his second indecent assault count, another consecutive five-year probation term for corruption of

- 4 -

minors, and a concurrent five-year term of probation for unlawful contact with a minor.

Appellant appealed, challenging the discretionary aspects of his new sentence. ***Commonwealth v. Cole***, 2015 WL 7302858, *1 (Pa. Super., filed Apr. 10, 2015) (unpublished memorandum). This Court found that he waived his lone claim by not including a statement in his brief pursuant to Pa.R.A.P. 2119(f), and affirmed the judgments of sentence. ***Id.*** at *2; ***Commonwealth v. Cole***, 121 A.3d 1127 (Pa. Super. 2015) (table). Following the filing of a petition for relief pursuant to Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-46, the lower court reinstated Appellant's direct appeal rights *nunc pro tunc*. Order, 3/31/16, 1. This Court then reaffirmed the judgments of sentence, again finding that he waived a discretionary sentencing claim, this time for lack of preservation in an objection or a post-sentence motion. ***Commonwealth v. Cole***, 2017 WL 2312345, *2 (Pa. Super., filed May 26, 2017) (unpublished memorandum); ***Commonwealth v. Cole***, 170 A.3d 1261 (Pa. Super. 2017) (table). Appellant subsequently filed two PCRA petitions that are not relevant to the disposition of this appeal.

On February 16, 2020, Appellant was detained after he was arrested and charged with, *inter alia*, possessing a controlled substance with intent to deliver and driving under the influence of alcohol or a controlled substance. Motion to Lift Detainer, 6/15/20, ¶ 2. While the charges in that new case were withdrawn with the exception of a summary charge for disorderly conduct, the

court below initiated the probation revocation proceedings that are the focus of this appeal. Motion to Lift Detainer, 6/23/20, ¶ 4; Order, 6/16/20, 1.

The lower court subsequently received notice that Appellant was having homicidal ideations such that he was supposedly having hallucinations commanding him to kill the lower court jurist and having visual hallucinations of blood spatter. N.T. Bifurcated Second Revocation Hearing, 3/30/21, 3. Appellant reported those developments to a mental health specialist at the Allegheny County jail and that information was relayed to the lower court. *Id.* After the court noted that for the record, the revocation proceeding was bifurcated in order to permit Appellant to receive a full psychiatric evaluation. *Id.* at 5-6.

At the resumed hearing, Appellant's counsel confirmed that Justice Related Services ("JRS") "was not able to locate a residential facility that would accept" Appellant.[4] N.T. Bifurcated Second Revocation Hearing, 6/22/21, 3. The court was also informed that Appellant's request to continue his proceedings in front of Allegheny County's Mental Health Court was rejected. *Id.* at 4. Appellant's counsel informed the court that Appellant had successfully completed a rehabilitative program in his prior year of detainment. *Id.* at 4 (referring to Appellant's completion of "the HOPE Program"). Counsel acknowledged that Appellant had a "little outburst" at the

---

[4] The JRS is a division of the Allegheny County Department of Human Services' Office of Behavioral Health that assists persons with mental illness and/or mental or substance use disorders who are involved in the criminal justice system. *See* Appellant's Brief at 10 n.2.

court at a prior listing. *Id.*, *see* N.T. Bifurcated Second Revocation Proceeding, 11/3/20, 12 (Appellant: "Keep on doing what you are doing. You are going to have something wrong with this fucking world before you die. Fuck it."). Other than that, counsel noted that Appellant had no subsequent write-ups while in jail. N.T. Bifurcated Second Revocation Hearing, 6/22/21, 4-5. Counsel also noted that Appellant indicated that he could have had a placement if the court placed him on house arrest. *Id.* at 5. Counsel asked that if a state confinement sentence would be imposed that it should "not be a lengthy one." *Id.* at 5-6. Counsel requested a sentence of "one and a half to three or two to four" years if the court was inclined to impose a state prison sentence. *Id.* at 6.

Appellant's counsel did not dispute that Appellant violated his court supervision. N.T. Bifurcated Second Revocation Hearing, 6/22/21, 7 ("Just we are not disputing, obviously, he violated; however, it was, I believe, reduced to summary offenses. So it would be summary offenses and technical violations…"). In addition to an acknowledged summary offense conviction for disorderly conduct, Appellant committed a technical violation of his court supervision by failing to successfully complete his sex offender treatments. *Id.* at 8. The court was informed that the violations occurred in the probationary portion of Appellant's prior revocation sentence. *Id.* at 7 ("The Court: And he violated within the two-year period of probation consecutive to

his parole at Count 1; correct?  Agent Ackerman: That is correct, Your Honor.").[5]

Following the review of a presentence investigation report, N.T. Bifurcated Second Revocation Hearing, 6/22/21, 2, the court elected to revoke Appellant's probation and impose a new sentence.  It remarked:

> Having considered every possible community alternative and finding none, in considering his behavior and concerns in treatment programs through the Mental Health Specialty Courts, I do find there is no community supervision alternative and that a sentence of incarceration is the only way to ensure that he continues to make progress in his mental health treatment and reaches a point of care where he is able to function in the community.

*Id.* at 10.  The court sentenced Appellant to two and one-half to seven years of imprisonment for corruption of minors, and concurrent two-year terms of

---

[5] Appellant's first revocation sentence had a maximum aggregate imprisonment term of seventy-two months.  The sentencing order for those judgments of sentence indicate that Appellant received credit for time served starting on December 16, 2013.  Sentencing Order, 3/24/14, 2.  Appellant thus finished serving parole on December 16, 2019, months before the commission of the summary offense that formed part of the basis for his instant supervision violation.  Accordingly, our *en banc* decision in **Commonwealth v. Simmons**, 262 A.3d 512, 527 (Pa. Super. 2021) (*en banc*) (prohibiting the practice of revoking probation for an anticipatory violation of a probation term that a defendant has not yet started serving), does not pose an issue with the legality of the revocation sentence at issue.

probation for the remaining offenses.[6]  *Id.* at 11; Sentencing Order, 6/22/21, 1-2.

Appellant timely filed a post-sentence motion seeking reconsideration of his sentence and a notice of appeal.  Notice of Appeal, 7/21/21, 1-2; Order Denying Post-Sentence Motion, 7/6/21, 1; Post-Sentence Motion, 7/2/21, 1-6; *see* Pa.R.Crim.P. 708(E) (setting a ten-day deadline for filing a motion to modify a probation revocation sentence and noting that that motion "will not toll the 30-day appeal period").  He also voluntarily filed a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Rule 1925(b) Statement, 8/16/21, 1-5.

Appellant presents the following question for our review:

> Whether the trial court abused its discretion in revoking and re-sentencing Mr. Cole at Count 3—Corruption of Minors to a sentence of total confinement where it failed to consider the protection of the public, the gravity of the violations, and the character, personal history, and rehabilitative needs of Mr. Cole, as required by 42 Pa.C.S. § 9721(b)?

Appellant's Brief at 7 (suggested answer and answer of lower court omitted).

Appellant challenges his imprisonment term alleging that the revocation court abused its discretion by "focusing nearly exclusively on [his] difficulties

---

[6] We note that the Resentencing Guidelines apply when probation is revoked based on an offense committed on or after January 1, 2020.  *See* 204 Pa. Code § 307.2(b); *see also* 42 Pa.C.S. § 2154.4.  Here, because Appellant committed his underlying offenses in 2012, the revocation court was not required to consider the Resentencing Guidelines when it imposed the sentence at issue.

in finding suitable housing as a result of his mental issues … to the complete exclusion of his recent improvements, advancements, and positive development." Appellant's Brief at 19, 36-38. He notes that the court cited that a lengthy state imprisonment sentence was necessary for progress in his mental health treatment, but he questions why a smaller county imprisonment term was not chosen as he supposedly "demonstrated [a] record of recent mental health success" there. *Id.* at 20, 37. He alleges that the court did not meet the requirements of 42 Pa.C.S. § 9721(b) by failing to consider statutory factors for mitigation when it imposed his prison term "based solely on technical violations of probation." *Id.* at 20, 29, 39.

In the remarks reproduced above, *see supra* pg. 8, the revocation court's statement of reasons for the prison term focused on the lack of available placements for Appellant and the need to foster his mental health treatment. N.T. Bifurcated Second Revocation Hearing, 6/22/21, 10. In its Rule 1925(a) opinion, the court renews its concerns for the progress of Appellant's mental health treatment but adds that the sentence in question was also related to the likelihood that Appellant would reoffend and the need to protect the community from him:

> In sentencing Appellant, this Court considered, in addition to the Pre-Sentence Report, Appellant's failure to succeed in community placement settings. Appellant failed to consistently attend sex offender treatment, which placed the community at substantial risk. Appellant failed out of Mental Health Court and the variety of programs available to him through that specialty court. Furthermore, Justice Related Service ("JRS") was unable to locate a residential placement that would accept Appellant. The conduct

- 10 -

of Appellant, in failing to address his mental health and sex offender issues, indicates that it is likely that he will commit another crime if he is not imprisoned. This Court determined that the only way to compel Appellant's compliance with mental health treatment and protect the community was to sentence him to incarceration. Since this Court considered the character, personal history, and rehabilitative needs of Appellant, in addition to the gravity of the underlying offense and the protection of the public, it did not err in imposing a sentence of 2-6 years of incarceration.

Revocation Court Opinion, 8/23/21, 5-6 (notes of testimony citations omitted).[7]

Our review of a sentence imposed following the revocation of probation is limited to consideration of "the validity of the revocation proceedings, the legality of the sentence imposed following revocation, and any challenges to the discretionary aspects of the sentence imposed." **Simmons**, 262 A.3d at 515. When reviewing a challenge to the discretionary aspects of a sentence, this Court will not disturb a sentence on appeal absent a manifest abuse of discretion. **Commonwealth v. Sulpizio**, --- A.3d ----, 2022 WL 3349519, *5 n.9 (Pa. Super., filed Aug. 15, 2022).

In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

*Id.*

---

[7] We note that the court incorrectly asserts that the prison sentence at issue is "2-6 years" when in fact it is two and one-half to seven years of imprisonment. Sentencing Order, 6/22/21, 1.

- 11 -

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [708]; whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (formatting altered and citation omitted).

As a preliminary matter, we note that Appellant timely filed a notice of appeal and preserved in a timely-filed post-sentence motion his claim that the revocation court abused its discretion by inadequately considering the sentencing factors at 42 Pa.C.S. § 9721(b) and imposing an excessive sentence. Notice of Appeal, 7/21/21, 1-2; Post-Sentence Motion, 7/2/21, ¶ 6(1)(i)-(vi). We also note that he included a separate statement in his brief that was required by Pa.R.A.P. 2119(f). Appellant's Brief at 21-28. In his Rule 2119(f) statement, Appellant alleges that his sentencing claim presents a substantial question permitting our review because it alleges that the revocation court imposed an incarceration sentence for only technical violations of probation, and it did so by failing "to follow the mandates of 42 Pa.C.S. § 9721(b)." Appellant's Brief at 26-28. We agree that his claim presents a substantial question. *See Commonwealth v. Caldwell*, 117 A.3d

763, 769-770 (Pa. Super. 2015) (*en banc*) (an assertion that a sentence is excessive, in conjunction with a claim that the trial court failed to consider mitigating factors, raises a substantial question); ***Commonwealth v. Derry***, 150 A.3d 987, 995 (Pa. Super. 2016) (holding that a claim that a violation-of-probation court failed to consider section 9721(b) sentencing factors presents a substantial question for our review); ***Commonwealth v. Crump***, 995 A.2d 1280, 1282 (Pa. Super. 2010) (holding that the imposition of a sentence of total confinement after the revocation of probation for only a technical violation of probation raises a substantial question; "The imposition of a sentence of total confinement after the revocation of probation for a technical violation, and not a new criminal offense, implicates the 'fundamental norms which underlie the sentencing process.'"). Accordingly, we may proceed to review the potential merit of Appellant's sentencing claim.

At the core of his claim, Appellant asserts that the revocation court imposed an excessive imprisonment term for technical violations of probation by failing to adequately consider statutory sentencing factors. Brief for Appellant, 35-39. Those factors are addressed in 42 Pa.C.S. § 9721(b), which provides that

> the [trial] court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S. § 9721(b).

- 13 -

In the course of presenting his claim, Appellant acknowledges that the revocation court requested a new pre-sentence investigation report for its consideration. Appellant's Brief at 12. At the same time, he does not address the fact that the existence of that report creates a presumption that the sentencing judge was aware of the relevant information regarding his character and weighed those considerations along with the mitigating statutory factors at Section 9721(b). *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) ("Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."). He cites the *Devers* decision that recognized that presumption, but he neither addresses the presumption or his burden to overcome it.

While the presumption addressed in *Devers* is rebuttable, *see Commonwealth v. McCain*, 176 A.3d 236, 243 & n.3 (Pa. Super. 2017), Appellant provides this Court with little reason to overlook the presumption that the revocation court adequately considered the Section 9721(b) sentencing factors. He highlights his completion of a rehabilitative program and his avoidance of "write-ups" during his county detainment, Appellant's Brief at 24-25, but he fails to reconcile those positive developments with other recent developments that pose questions about the viability of continued probation or county imprisonment. Those other developments include his failure to complete his sex offender treatments and his recent bout of homicide

ideations and hallucinations. He proposes that a smaller county imprisonment term would have been preferrable and adequate, but he fails to note that his ideations and hallucinations that needed to be brought to the revocation court's attention occurred while he was in a county jail. N.T. Bifurcated Second Revocation Hearing, 3/30/21, 2-3. That development suggesting that he was possibly a threat to the revocation court, on top of his rejection from a mental health court and his non-existent options for out-of-custody placements, appeared to support the revocation court's conclusion that a significant term of state confinement was necessary to foster his mental health treatment.

Appellant asserts that the revocation court did not adequately consider the statutory factors in Section 9721(b), but the record belies his argument. The court tells us in its opinion that it considered those factors. Revocation Court Opinion, 8/23/21, 6. Additionally, before imposing its sentence, the court specifically addressed his rehabilitative needs, reflecting on his inability to proceed with a mental health court adjudication as follows:

> THE COURT: To be clear, originally he was in Mental Health Court. Back with Judge Zotolla he was in Mental Health Court. Judge Zotolla actually terminated him from Mental Health Court, but then transitioned to Judge Lazzara, and she gave him another opportunity in Mental Health Court.
>
> By report, Mental Health Court did give him a chance in every program they had available and he was unsuccessful in following the rules in those programs, so those options were already tried as well.

N.T. Bifurcated Second Revocation Hearing, 6/22/21, 8-9. Those comments reflected that the court considered his mental state and his rehabilitative needs as it considered a lengthy state sentence as a last resort left by the exhaustion of attempts to meaningfully address his mental health treatment at the county level. The court's comments in its Rule 1925(a) opinion about Appellant's likelihood to reoffend also appear to be a reasonable reaction to Appellant's failure to complete sex offender treatments, where his underlying offenses had him aggressively pursuing sexual contact with a twelve-year-old girl, and his failure to receive adequate mental health treatment, where his county imprisonment was coinciding with him "having command hallucinations telling him to kill" the revocation judge. N.T. Bifurcated Second Revocation Hearing, 3/30/21, 3.

In these circumstances, we cannot find that the sentence imposed was manifestly unreasonable or the result of any partiality, prejudice, bias, or ill-will. *See Commonwealth v. Carver*, 923 A.2d 495, 498 (Pa. Super. 2007) ("Technical violations can support revocation and a sentence of incarceration when such violations are flagrant and indicate an inability to reform."). We presume that the revocation court adequately considered the statutory sentencing factors in Section 9721(b), given its review of a pre-sentence investigation report. Appellant fails to overcome that presumption which he does not acknowledge.

As an aside, we note that the revocation court incorrectly notes in its sentencing order that Appellant is subject to lifetime registration requirements

as a sex offender.  Sentencing Order, 6/22/21, 1-2.  The revocation court previously acknowledged that, due to legislative amendments, Appellant should now only be subject to a ten-year registration requirement.  Order, 4/19/18, 1; *see* 42 Pa.C.S. § 9799.55(a) (requiring a ten-year registration requirement for individuals convicted within this Commonwealth of indecent assault and unlawful contact with a minor where those offenses were committed between April 22, 1996, and December 20, 2012).  Because the sentencing order on appeal incorrectly lists the duration of Appellant's sex offender registration requirement, we must remand this case for correction of the order.  *See Commonwealth v. Borrin*, 12 A.3d 466, 473 (Pa. Super. 2011) (*en banc*) (a sentencing order is subject to later correction when a trial court's intentions are clearly unambiguously declared during the sentencing hearing, such that a "clear clerical error" appears on the face of the record); N.T. Bifurcated Second Revocation Hearing, 6/22/21, 12 (after Appellant attempted to correct the revocation court as to the length of his registration requirement, the court responded, "The last note I had was in fact from 2013 and it did indicate lifetime.  So if that has since changed, then of course, whatever it was, does apply.").

Judgments of sentence affirmed.  Case remanded for correction of the sentencing order.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/2/2022