J-S38008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                              :            PENNSYLVANIA
                                                :

              v.                                        :
                                              :

DAMON B. MCKIE                     :
                                            :
           Appellant                :     No. 3231 EDA 2023

Appeal from the Judgment of Sentence Entered November 17, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000443-2020

BEFORE: STABILE, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:            **FILED APRIL 1, 2025**

Appellant, Damon B. McKie, appeals from his judgment of sentence of twenty to forty years' imprisonment following revocation of his probation. Appellant argues that his sentence is both manifestly excessive and an overreaction to this Court's decision in ***Commonwealth v. Simmons***, 262 A.3d 512 (Pa. Super. 2021) (*en banc*). We affirm.

The sentencing court thoroughly recounted the factual and procedural history of this case as follows:

> On November 6, 2019, at approximately 9:00 p.m., [E.S.], hereinafter referred to as the "Complainant," was alone in her apartment when she heard a loud noise coming from the back door. The Complainant investigated and saw Appellant inside her apartment. The Complainant and Appellant had been in a relationship for about (2) years but had broken up around a month earlier. At this time, the Complainant had a valid Protection From Abuse Order against Appellant. Appellant grabbed the Complainant's cell phone out of her hand and threw it on a bed,

---

[*] Former Justice specially assigned to the Superior Court.

then grabbed the Complainant by the neck and threw her onto the bed as well. Appellant continually choked the Complainant until she blacked out, then slapped her awake. Eventually, the Complainant was able to grab her phone and tried calling the police. Appellant prevented her doing so and continued choking her, demanding that she give him the password to her phone.

The Complainant told Appellant multiple times to leave, but he refused to do so. Appellant told the Complainant that she had to get back together with him or have sex with him and that he would kill her if she did not. When the Complainant refused, Appellant pulled her pants down and pulled the Complainant on top of him while he was sitting on the couch. The Complainant got off and tried to walk away, but Appellant pulled her back. The Complainant again tried to pull away from Appellant, but he hit her on the face and told her to shut up. The Complainant asked Appellant to leave again, which he ultimately did around 1:00 a.m. on November 7, 2019. The Complainant immediately called police. As a result of the incident, the Complainant sustained marks on her neck and jaw and experienced soreness in her jaw that affected her ability to open her mouth or eat for several days.

Appellant was subsequently arrested and charged with multiple criminal offenses: Attempted Rape, Burglary, Strangulation, Aggravated Assault, Criminal Trespass, Criminal Mischief, Stalking, Contempt for Violation of Order or Agreement, Indecent Assault, Simple Assault, and Recklessly Endangering Another Person. On January 27, 2021, Appellant pled guilty before this Court to Burglary, Strangulation, and Contempt for Violation of Order or Agreement. Both Burglary and Strangulation were graded as felonies of the first degree. On April 16, 2021, this Court sentenced Appellant to an aggregate term of eleven-and-a-half (11½) to twenty-three (23) months of confinement, followed by a consecutive period of eight (8) years of reporting county probation. This Court awarded Appellant credit for time served and immediately paroled him to the Gaudenzia Together House Men's Program in Philadelphia.

On May 13, 2021, the Philadelphia Adult Probation and Parole Department was notified that Appellant had been harassing the Complainant and her family on social networks by threatening to retaliate against the Complainant for having him incarcerated and threatening to shoot up her parents' home. The Complainant subsequently obtained a temporary Protection From Abuse Order

against Appellant. On May 24, 2021, this Court granted permission for the Philadelphia County Sheriff's Department to go to Gaudenzia and remand Appellant into custody to appear before this Court for a violation of probation/parole hearing.

This Court held a hearing on June 3, 2021. The Commonwealth presented exhibits of what Appellant had sent to the Complainant while serving his parole at Gaudenzia. In the first message, sent on Instagram using a profile under his own name, Appellant said: "It's cool when sumbody shoot your parents house up dont try talk to me then." In the second message, sent on Instagram using a fake profile under a different name, Appellant told the Complainant: "You hurt me so deep its not a joke after everything me and you went threw an you tried to have me rot in jail ... I wrote you to apologize and you still came to court in out now and I want revenge soooo bad but I wanna talk to you...." Appellant also texted on May 16, 2021: "Every thing that's bout to take place blame on [the Complainant]. People watching yall every move best thing to do is to move. nobody like a SNITCH." Appellant then used a fake profile to send the following six (6) messages to the Complainant on the Cash App:

4:33 p.m.: imtryingtomakethiseasythisyourlastchance
6:13 p.m.: For you sent me to jail I can never for get
6:14 p.m.: For or let that go. you dont kno what it did to me
6:14 p.m.: For You living your life while i rottened. no remorse
6:15 p.m.: For You talk to me i leave you alone.
6:16 p.m.: For if not I get to anybody you love for payback

This Court found Appellant in violation of his probation and parole for contacting and threatening the Complainant and her family. Accordingly, this Court revoked both Appellant's probation and parole and resentenced him to a new aggregate term of five (5) to fifteen (15) years of state confinement. This Court awarded Appellant credit for time served and additionally imposed a stay away order from the Complainant. On June 14, 2021, Appellant filed a post-sentence motion to reconsider and modify sentence in which he asserted that his new sentence was manifestly excessive given his prior record score of one (1) and because it failed to appropriately consider his rehabilitative needs.

On August 18, 2021, the Superior Court of Pennsylvania issued an *en banc* decision in ***Commonwealth v. Simmons***, 262 A.3d 512 (Pa. Super. 2021). In ***Simmons***, the Superior Court overruled

decades of precedential case law and held that a trial court may not anticipatorily revoke an order of probation if conduct giving rise to a violation of probation occurred after sentencing but before the period of probation had begun. *Id.* at 527. The Superior Court stated within the *Simmons* decision that an order revoking parole does not impose a new sentence but instead requires a defendant "to serve the balance of a valid sentence previously imposed." *Id.* (quoting *Commonwealth v. Mitchell*, 632 A.2d 934, 936 (Pa. Super. 1993)).

On August 31, 2021, Appellant filed a supplemental post-sentence motion to reconsider and modify sentence in which he requested that this Court reconsider his sentence in light of the *Simmons* decision. Appellant argued that he was still on parole and that his probationary period had not yet begun when the misconduct forming the basis of his violation occurred, meaning his probation could not have been anticipatorily revoked under *Simmons*. Appellant noted that his supplemental post-sentence motion was timely as this Court had not yet ruled on his first post-sentence motion and it had also not yet been denied by operation of law.

This Court held a hearing on September 30, 2021, to address Appellant's supplemental post-sentence motion. Appellant's counsel requested, based on the holding of *Simmons*, that this Court resentence Appellant to the remainder of his original sentence. N.T. 9/30/2021, at 7-10. This Court then permitted the Complainant an opportunity to address this Court and explain the impact of what Appellant had done to her. The Complainant stated that she was "very frustrated" and "very tired" because she had done everything she could to move on with her life, including going to police, obtaining Protection From Abuse orders, and receiving therapy and trauma counseling, but that Appellant continued to harass her and her family. *Id.* at 13-14. The Complainant characterized Appellant as a danger to her, her family, and to the city of Philadelphia. *Id.* at 14-15. This Court explained to the Complainant that its ability to resentence Appellant was now limited by the holding of *Simmons* but assured her that Appellant would receive a much harsher sentence than the five (5) to fifteen (15) years this Court originally imposed on June 3, 2021, if Appellant made even "the slightest contact" with her. *Id.* at 15-19.

Thereafter, this Court ordered that Appellant be remanded to the Philadelphia County Prison to serve the remainder of his original

sentence, a period of approximately four (4) months. *Id.* at 19-21. With no objection from Appellant's counsel, this Court also ordered that Appellant be concurrently placed on county reporting probation for the original period of eight (8) years. *Id.* at 20-21. After restoring Appellant's original sentence, this Court cautioned Appellant that he would be headed back to state prison if there were any further violations based on the "slightest contact" between him and the Complainant or her family. *Id.* at 21. This Court also encouraged Appellant to get on with his life and receive the treatment he needed in order to not bother anyone else and allow the Complainant and her family to get on with their lives. *Id.* Appellant did not file either a post-sentence motion or a notice of appeal following this hearing.

On December 22, 2021, this Court held a status listing and ordered that Appellant be released to house arrest with electronic monitoring and transported by the Philadelphia County Sheriff's Department to Fresh Start Recovery House in Philadelphia. This Court was then notified on March 8, 2022, that Appellant was not released to Fresh Start Recovery House due to an issue with the language in its December order. N.T. 3/8/2022, at 3. Because Appellant was being released to house arrest, he was not eligible to be transported by the Sheriff's Department and would instead be released on his own once electronic monitoring was in place. *Id.* Accordingly, on March 8, 2022, this Court issued a new order that Appellant be released to house arrest with electronic monitoring. Appellant was subsequently released to house arrest at the Fresh Start Recovery House.

On April 13, 2022, Appellant was arrested on new criminal charges filed in Bucks County, Pennsylvania, based on offenses committed from December 2019 through April 2022. The charges were based on evidence that Appellant had used numerous fake social media accounts under fake names to repeatedly contact, threaten, and harass the Complainant, share intimate images of the Complainant with the Complainant, her mother, other family members, and friends, and post the addresses of the Complainant and her mother with invitations for men to show up for sexual encounters. This Court subsequently set a violation of probation hearing date for May 20, 2022, which was continued pending the disposition of Appellant's open Bucks County case. On January 27, 2023, Appellant pled guilty in Bucks County on docket number CP-09-CR-0002417-2022 to two (2) counts of Stalking, four (4) counts of Harassment, and one (1) count each of Terroristic

- 5 -

Threats, Unlawful Dissemination of Intimate Image, and Tampering With or Fabricating Physical Evidence. On June 12, 2023, Appellant was sentenced in Bucks County by the Honorable Jeffrey L. Finley to four (4) to nine (9) years of confinement, followed by seven (7) years of probation.

This Court held a brief hearing on June 16, 2023, in which Appellant's counsel requested that Appellant's probation be terminated due to the sentence he received in Bucks County. This Court denied the motion and continued Appellant's matter to hold a violation of probation hearing. On September 29, 2023, this Court found Appellant in direct violation of his probation based on his new convictions in Bucks County and revoked his probation. Additionally, this Court ordered that a new presentence investigation report and mental health evaluation be completed for Appellant. N.T. 9/29/2023, at 3-4.

This Court subsequently held a resentencing hearing on November 17, 2023, in which it heard arguments from Appellant's counsel and the Commonwealth, victim impact statements from both the Complainant and her mother, and allocution from Appellant. N.T. 11/17/2023, at 12-31. The Complainant told this Court that she had gone to the police after Appellant used fake social media profiles to send her threatening messages in April 2022 and threaten to send explicit images to her family. *Id.* at 14-19. Even when contacted by police and told to stop contacting the Complainant, Appellant attempted to create a series of fake text messages to make it appear as though the Complainant was setting him up. *Id.* at 18. She emphasized that Appellant had contacted and harassed her every time he was released from custody and implored this Court to protect her, her family, and other women from Appellant by incarcerating him. *Id.* at 20-21. The Complainant's mother stated that she had contacted police after Appellant sent numerous messages about her daughter and shared her address online. *Id.* at 21-24. Appellant acknowledged that he "made a mistake" and asked this Court to give him another opportunity to prove that he could change. *Id.* at 29-30.

Thereafter, this Court reiterated that Appellant was in direct violation of his probation and resentenced Appellant to ten (10) to twenty (20) years of confinement on his Burglary conviction and a consecutive ten (10) to twenty (20) years of confinement on his Strangulation conviction. *Id.* at 34. Furthermore, this Court ruled that Appellant would receive credit for time served and that his

- 6 -

new aggregate sentence of twenty (20) to forty (40) years of confinement would run consecutive to the sentence he received in Bucks County. *Id.* at 34-37. This Court acknowledged that Appellant's new sentence exceeded the recommendations of the sentencing guidelines, but that it was necessary to protect the public, community, and the complainants. *Id.*

On November 22, 2023, Appellant's counsel filed a timely petition to vacate and reconsider sentence, arguing that Appellant's new sentence was excessive in that it far surpassed what was required to protect the public, the Complainant, or the community, and was well beyond what was necessary to foster Appellant's rehabilitation. This Court did not act upon Appellant's petition within thirty (30) days. On December 18, 2023, Appellant's counsel filed a notice of appeal of the judgment of sentence imposed by this Court on November 17, 2023, following the revocation of Appellant's probation. Appellant's counsel noted within the notice of appeal that because a timely post-sentence motion does not toll the time to appeal under Pa.R.Crim.P. 708, no order acting upon the motion or denying it by operation of law was needed before Appellant could timely appeal.

On December 19, 2023, this Court directed Appellant to file a 1925(b) Statement of Errors Complained of on Appeal. On the same date, this Court held a hearing and allowed Appellant's counsel to litigate the petition to vacate and reconsider sentence *nunc pro tunc*. After hearing argument, this Court denied Appellant's petition and ruled that his violation of probation sentence from November 17, 2023, would stand.

Trial Court Opinion, 3/6/24, at 1-9 (footnotes omitted). Both Appellant and the sentencing court complied with Pa.R.A.P. 1925.

Appellant raises a single issue in this appeal:

Did the lower court err and abuse its discretion and impose an unreasonable, grossly disproportionate and manifestly excessive sentence where the court failed to appropriately consider Appellant's background and rehabilitative needs and focused its consideration entirely on the severity of Appellant's offenses and their effect upon the complainants[?]

Appellant's Brief at 2.

Appellant raises a challenge to the discretionary aspects of his sentence. To challenge the discretionary aspects of sentence, Appellant must satisfy a four part test. He must (1) file a timely notice of appeal; (2) properly preserve the issue at sentencing or in a motion to reconsider and modify the sentence; (3) comply with Pa.R.A.P. § 2119(f), which requires a separate section of the appellate brief to set forth a concise statement of the reasons relied upon for allowance of appeal; and (4) present a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Commonwealth v. DeJesus*, 266 A.3d 49, 55 (Pa. Super. 2021).

Pa.R.Crim.P. 708(E) requires an appeal to be filed within thirty days after the court imposes sentence following revocation of probation. Here, on Monday, December 18, 2023, Appellant timely appealed from the sentence imposed on November 17, 2023.[1] At sentencing, Appellant raised and thus

_____

[1] The November 17, 2023, sentence is the only judgment of sentence now before us on direct appeal. The court lacked jurisdiction to impose Appellant's prior sentence on September 30, 2021, but it is too late at this juncture for us to correct this error.

On April 16, 2021, the court sentenced Appellant to 11½-23 months' imprisonment followed by eight years' probation. On June 3, 2021, the court revoked Appellant's parole and probation and sentenced him to 5-15 years' imprisonment. Appellant never appealed the June 3, 2021, sentence. Instead, he filed a post-sentence motion on June 14, 2021, and a supplemental post-sentence motion raising *Simmons* on August 31, 2021. Neither of these motions to modify sentence tolled the thirty-day appeal period. *See* Pa.R.Crim.P. 708(E) ("A motion to modify a sentence imposed after a revocation shall be filed within 10 days of the date of imposition. The filing of a motion to modify sentence will not toll the 30-day appeal period").
*(Footnote Continued Next Page)*

preserved his objection to the alleged excessiveness of his sentence. Appellant's brief complies with Pa.R.A.P. 2119(f) by providing a concise statement of reasons relied upon for challenging his sentence. Finally, a substantial question exists "where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Zirkle***, 107 A.3d

_____

On September 30, 2021, the court accepted Appellant's ***Simmons*** argument and ordered his original April 16, 2021, sentence restored. The court lacked jurisdiction to enter this order because Appellant's June 3, 2021, sentence became final in early July 2021 due to lack of an appeal.

Nevertheless, neither party can challenge the legality of the September 30, 2021, sentence in this appeal, because this sentence has long been final, and neither party challenged this sentence in a timely direct appeal. Nor did Appellant challenge the legality of his sentence in a timely petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. ***See Commonwealth v. Diaz***, 314 A.3d 852, 855 (Pa. Super. 2024) (citing ***Commonwealth v. Infante***, 63 A.3d 358, 368 (Pa. Super. 2013)) (defendant contended that his 2022 sentence revoking probation was illegal under ***Simmons*** as well as prior sentences in 2009 and 2018 for violations of probation; held that "the only judgment of sentence now before this Court on direct appeal is the one entered on June 23, 2022. [Appellant's] prior sentences, including those imposed in 2009 and 2018, are of no moment because they long have been final. Appellant is therefore precluded from disturbing those prior sentences at the present juncture, when only his present sentence is before us"); ***see also Commonwealth v. Jeffery***, 2024 WL 4635260, *2 (Pa. Super., Oct. 31, 2024) (non-precedential memorandum; following ***Diaz***); ***Commonwealth v. Youn***, 2024 WL 2797053, *4 (Pa. Super., May 31, 2024) (same); Pa.R.A.P. 126(b) (unpublished, non-precedential memorandum decisions of Superior Court filed after May 1, 2019 may be cited for their persuasive value).

127, 132 (Pa. Super. 2014). Moreover, a substantial question is raised where an excessive sentence claim is raised "in conjunction with an assertion that the court failed to consider mitigating factors." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*). The sentencing court determined, and we agree, that Appellant raised a substantial question under these precedents.

We review a trial court's sentencing determination for an abuse of discretion:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Zirkle*, 107 A.3d at 132. Similarly, revocation of a probation sentence is within the sound discretion of the trial court, and we will not disturb this sentence absent an error of law or abuse of discretion. *Commonwealth v. Smith*, 325 A.3d 794, 796 (Pa. Super. 2024).

Upon the revocation of probation, a sentencing court "possesses the same sentencing alternatives that it had at the time of initial sentencing." *Commonwealth v. Philipp*, 709 A.2d 920, 921 (Pa. Super. 1998). The Sentencing Guidelines do not apply to sentences imposed following revocation

of probation.[2] ***Commonwealth v. Ferguson***, 893 A.2d 735, 739 (Pa. Super. 2006). Rather, "upon sentencing following a revocation of probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence." ***Commonwealth v. Tann***, 79 A.3d 1130, 1132 (Pa. Super. 2013). In multiple conviction cases arising out of one incident, the court has the discretion to run multiple sentences consecutively. 42 Pa.C.S.A. § 9757; ***Commonwealth v. Wienckowski***, 537 A.2d 866, 870 (Pa. Super. 1988).

When imposing a sentence, a trial court is required to consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant," and state its reason for the sentence on the record. 42 Pa.C.S.A. § 9721(b); ***Commonwealth v. Fowler***, 893 A.2d 758, 767 (Pa. Super. 2006). Where the court had the benefit of a presentence investigation ("PSI"), we can assume the court "was aware of relevant information regarding the defendant's character and weighed those considerations along

_____

[2] Pennsylvania's Resentencing Guidelines apply to revocations of probation for offenses committed on or after January 1, 2020. 204 Pa. Code § 307.2(b). The Resentencing Guidelines are not applicable here because Appellant committed his underlying offenses of burglary and strangulation before January 1, 2020. ***See Commonwealth v. Burgos***, 2024 WL 2934456, *8 & n.6 (Pa. Super., Jun. 11, 2024) (Resentencing Guidelines inapplicable because defendant committed his underlying offenses before 2020).

with mitigating statutory factors." ***Commonwealth v. Devers***, 546 A.2d 12,

18 (Pa. 1988).

The sentencing court's opinion thoroughly explained its reasons for

resentencing Appellant to a lengthy term of imprisonment:

> Appellant argues that this Court erred and abused its discretion when it imposed an aggregate sentence of twenty (20) to forty (40) years of confinement on November 17, 2023, following the revocation of Appellant's probation. At the resentencing hearing held on that date, this Court explained that Appellant was to be resentenced for violating his probation after pleading guilty to numerous criminal offenses in Bucks County. N.T. 11/17/2023, at 4-6. This Court stated its intention to only resentence Appellant on his Burglary and Strangulation convictions. ***Id.*** at 10. The Commonwealth and Appellant's counsel agreed that Appellant's new prior record score was two (2). ***Id.*** at 10-11. Accordingly, with an offense gravity score of nine (9) for Burglary, the sentencing guidelines recommended that this Court impose twenty-four (24) to thirty-six (36) months of confinement, plus or minus twelve (12) months. ***Id.*** at 11. With an offense gravity score of ten (10) for Strangulation, the sentencing guidelines recommended that this Court impose thirty-six (36) to forty-eight (48) months of confinement, plus or minus twelve (12) months. ***Id.***
>
> Appellant's counsel then addressed this Court, first stating that only some of the underlying criminal incidents from Appellant's Bucks County case occurred while Appellant was on this Court's probation. ***Id.*** at 8-10. Appellant's counsel also emphasized mitigating evidence which was described in Appellant's presentence investigation report and mental health evaluation, particularly highlighting that Appellant had a traumatic childhood and that he had demonstrated his willingness to receive treatment while incarcerated. ***Id.*** at 12-13.
>
> The Commonwealth subsequently called both the Complainant and her mother, [K.S.], to provide victim impact statements. The Complainant explained that she went to the police after Appellant, her ex-boyfriend, used fake social media profiles to send her threatening messages in April 2022 and threaten to send explicit images to her family. ***Id.*** at 14-19. Even when contacted by

police and told to stop contacting the Complainant, Appellant attempted to create a series of fake text messages to make it appear as though the Complainant was setting him up. *Id.* at 18. She also discussed the messages Appellant sent on the Cash App after he was paroled in which he threatened to shoot up the Complainant's parents. *Id.* at 18-19.

The Complainant emphasized that Appellant had been released from custody three (3) times before and had contacted her each time within days of his release. *Id.* at 19-20. She explained that she had gone through therapy but had decided to move out of state because of Appellant's continued harassment. The Complainant implored this Court to protect her, her family, and other women from Appellant by keeping him incarcerated. *Id.* at 20-21. The Complainant's mother told this Court that she contacted police after Appellant sent her numerous messages about her daughter and shared her address online. *Id.* at 21-24. The Complainant's mother stated that Appellant's actions had incited fear in her and put her daughter through a lot of stress. *Id.* at 24-25.

The Commonwealth then reminded this Court of the facts underlying Appellant's original Burglary and Strangulation convictions, recounting that Appellant "climbed through [the Complainant's] balcony at night, entered her bedroom, threw her down on the bed, attempted to remove her clothing, [and] strangled her to the point of near unconsciousness." *Id.* at 26-27. The Commonwealth acknowledged Appellant's mitigating circumstances but reiterated that he had violated his probation or parole multiple times even whilst receiving treatment, thus proving himself to be a danger to society and to the Complainant. *Id.* at 27-28. Accordingly, the Commonwealth requested this Court go above the sentencing guidelines and impose concurrent sentences of eight (8) to twenty (20) years of confinement on Appellant's Burglary and Strangulation convictions, to be run consecutively to his Bucks County sentence. *Id.* at 28.

Appellant was given an opportunity to address this Court. Appellant acknowledged that he "made a mistake," stated that he felt bad about his actions, and expressed his desire to have another opportunity to prove that he could change and not let his impulses and anger take over. *Id.* at 29-30. Appellant noted that nothing was stopping him from contacting either the Complainant

or her family while incarcerated, but that he was being respectful and that he recognized he needed to leave them alone. *Id.*

Thereafter, this Court stated that it had considered the facts and circumstances of both Appellant's original case and his Bucks County case, the sentencing guidelines, the sentencing codes, what Appellant and his counsel said, and the victim impact statements the Complainant and her mother gave. *Id.* at 31. This Court noted that it was very concerned that Appellant posed "a great danger" to the Complainant and her family, which is why it originally resentenced Appellant to five (5) to fifteen (15) years when he violated his parole in 2021. *Id.* This Court explained that Appellant was given another opportunity following the change in law regarding anticipatory revocation of probation, but that he "did the very same thing with the very same people" once he was released on house arrest. *Id.* at 31-32. This Court stated that the Complainant and her family were simply "asking to be left in peace" but that it did not believe Appellant was "capable of doing that." *Id.* at 31-33.

This Court stated its intention to go beyond the Commonwealth's sentencing recommendation based on Appellant's continued noncompliance with supervision, the danger he posed to the Complainant and her family, and the deception Appellant had used toward them. *Id.* at 33. This Court recognized that Appellant had a traumatic childhood and potential mental health issues given his obsession with the Complainant but observed that Appellant had been given opportunities for rehabilitation and nonetheless continued to reoffend. *Id.* Accordingly, this Court ruled that the sentencing guidelines, while helpful, were "not necessarily appropriate for this case based on the totality of the circumstances," including everything this Court heard during Appellant's resentencing hearing. *Id.* at 34.

This Court reiterated that it had found Appellant in direct violation of his probation and resentenced Appellant to ten (10) to twenty (20) years of confinement on his Burglary conviction and a consecutive ten (10) to twenty (20) years of confinement on his Strangulation conviction. *Id.* at 34. This Court ruled that Appellant would receive credit for time served and that his new aggregate sentence of twenty (20) to forty (40) years of confinement would run consecutive to his Bucks County sentence of four (4) to nine (9) years. *Id.* at 34-37. This Court explained its decision to depart from the sentencing guidelines by stating

that it was necessary for the "protection of the public and for protection of the community" and the Complainant and her family. *Id.* at 36.

The record thus reflects that in imposing an aggregate sentence of twenty (20) to forty (40) years of confinement against Appellant, this Court deviated from the sentencing guidelines. This alone was not an abuse of this Court's discretion, as the sentencing guidelines are not binding. In compliance with applicable case law, this Court first considered the sentencing ranges contemplated by the sentencing guidelines for Appellant's Burglary and Strangulation convictions. *Id.* at 10-11, 31, 34. Moreover, this Court clearly stated on the record its explanation for electing to deviate from the sentencing guidelines in fashioning Appellant's sentence.

This Court explained that it was necessary to deviate from the sentencing guidelines recommendations based on the factors set forth in 42 Pa.C.S.A. § 9721(b) of the Sentencing Code. This Court expressed concerns about both the nature of Appellant's original offenses against the Complainant for which he was sentenced to probation, as well as the offenses Appellant committed against the Complainant and her mother while serving that term of probation. *Id.* at 31-33. Based on Appellant's apparent inability to leave the Complainant and her family alone even while under supervision and receiving treatment, this Court appropriately found that Appellant posed a great danger not only to the Complainant and her family, but to all women. *Id.* Appellant's sentence of confinement was thus consistent with the protection of the public, as well as the gravity of Appellant's offenses as related to their impact on the Complainant and the community.

In reaching this conclusion, this Court did consider the victim impact statements provided by the Complainant and her mother at Appellant's resentencing hearing. *Id.* at 31. Contrary to Appellant's assertions, however, this Court also relied on other considerations. This Court was fully informed by a presentence investigation report that it ordered for Appellant in advance of his resentencing hearing, which made this Court aware of relevant information regarding Appellant's character. Moreover, this Court recognized the mitigating circumstances which were presented regarding Appellant's traumatic childhood. *Id.* at 33. This Court also noted its concerns about Appellant's potential mental health

issues, but ultimately concluded that Appellant's danger to the Complainant and others outweighed his rehabilitative needs. *Id.*

This Court only arrived at this conclusion after Appellant was given multiple opportunities to rehabilitate and instead chose to exhibit a pattern of behavior in which he continually targeted and repeatedly harassed the Complainant. As part of this pattern of behavior, Appellant deceptively used fake social media profiles to send messages in which he threatened violence against both the Complainant and her family, tried to blackmail the Complainant using explicit images of her, and publicly posted the addresses of the Complainant and her mother. The Complainant told this Court that she had received therapy and done everything possible to protect herself and her family from Appellant, but that she intended to move out of state because of Appellant's continued pattern of harassing behavior toward her.

Appellant's original sentence following his Burglary and Strangulation guilty pleas called for a sentence of county confinement followed by a period of supervision. After being awarded credit for time served, Appellant was immediately paroled to receive treatment. Within months, while receiving that treatment, Appellant harassed and threatened the Complainant and her family. This Court believed at the time that a significant state sentence was appropriate based on Appellant's violation and resentenced him accordingly, but was later compelled to vacate Appellant's new state sentence based on the holding of ***Commonwealth v. Simmons***, 262 A.3d 512 (Pa. Super. 2021). Instead, this Court remanded Appellant into custody to serve the remainder of his original county sentence, effectively giving Appellant another opportunity to prove his rehabilitative potential. Appellant began receiving treatment once he was released from confinement, but again harassed the Complainant and her family within months using the same pattern of behavior, eventually leading to his guilty pleas in Bucks County.

Appellant's second violation led this Court to conclude that it was necessary to impose an even more significant state sentence than that which was originally imposed and later vacated following Appellant's first violation. Prior to imposing sentence, this Court contemplated Appellant's rehabilitative needs and determined that only a term of confinement would be appropriate, given that Appellant had twice before reoffended even while receiving treatment. The twenty (20) to forty (40) year aggregate sentence

this Court imposed against Appellant was thus a clear reflection of this Court's careful consideration of the facts of Appellant's numerous crimes and his character. Appellant's sentence was thus consistent with 42 Pa.C.S.A. § 9721(b) of the Sentencing Code.

As Appellant's Burglary and Strangulation convictions were graded as felonies of the first degree, each carried a maximum sentence of twenty (20) years. 18 Pa.C.S.A. § 1103(1). In imposing a sentence of ten (10) to twenty (20) years of confinement on each conviction, this Court did not exceed the statutory limits for either of Appellant's convictions. Accordingly, the record reflects that there is no basis to characterize Appellant's sentence as unreasonable, grossly disproportionate, or manifestly excessive. This Court clearly explained every consideration it made while fashioning Appellant's sentence and appropriately exercised its discretion in determining that an aggregate sentence of twenty (20) to forty (40) years of confinement was appropriate and necessary under the totality of the circumstances. Appellant's challenge to the discretionary aspects of his sentence is therefore without merit.

Trial Court Opinion, 3/6/24, at 13-20.

Appellant's sentence of twenty to forty years' imprisonment was a proper exercise of the court's discretion. The court correctly observed that burglary and strangulation are first degree felonies and that each carry maximum sentences of twenty years. *Id.* at 20 (citing 18 Pa.C.S.A. § 1103(1)). At the time of Appellant's initial sentencing, the court could have imposed sentences of ten to twenty years' imprisonment for each offense and could have run these sentences consecutively. *Wienckowski*, 537 A.2d at 870. The court retained these sentencing powers at the time it revoked Appellant's probation. *Tann*, 79 A.3d at 1132; *Philipp*, 709 A.2d at 921.

- 17 -

Furthermore, at sentencing, and again in its comprehensive opinion, the court carefully weighed all factors required under 42 Pa.C.S.A. § 9721(b), specifically, "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." *Id.* The court considered Appellant's lengthy pattern of violent, deceitful and disturbing conduct against the complainant and her family, Appellant's failure to rehabilitate himself despite multiple opportunities and the court's prior warnings, and mitigating circumstances arising from Appellant's childhood. The court also reviewed a presentence investigation report. Based on this body of information, the court concluded that the gravity of Appellant's offenses against the victim and her family, and the threat he posed to the community at large, outweighed Appellant's rehabilitative needs and warranted a lengthy sentence.

In addition, the court explained why its sentence deviated from the Sentencing Guidelines—even though, as noted above, the Sentencing Guidelines do not apply to sentences imposed following revocation of probation. *Ferguson*, 893 A.2d at 739. The fact that the court took this extra step does not bring its ultimate decision into question; to the contrary, it demonstrates that the court went above and beyond the call of duty in fashioning Appellant's sentence. *See Burgos*, 2024 WL 2934456, *8 & n.6 (affirming defendant's sentence where court explained that Sentencing

Guidelines did not apply to revocation sentence, and even if they did apply, a sentence outside Guidelines was proper under the circumstances).

Appellant argues that his sentence was excessive under **Commonwealth v. Coulverson**, 34 A.3d 135 (Pa. Super. 2011), in which this Court held that a sentence may be excessive "if the upper end of the sentence imposes a term unlikely to end during the defendant's natural life span or . . . perpetually subject to the discretion of the Board of Probation and Parole." **Id.** at 148. **Coulverson** overturned an *original* sentence of 18-90 years' imprisonment because the sentencing court "evinced no consideration whatsoever of the dysfunction that marked [defendant's] own life, his cooperation and remorse, his attempts at reclaiming a productive role in society, or the possibility that, with appropriate mental health treatment, he might succeed at rehabilitation." **Id.** at 150. Here, unlike in **Coulverson**, Appellant's sentence was not an original sentence; it was a revocation sentence imposed after Appellant repeatedly violated the terms of his sentence and repeatedly targeted the complainant and her family with violent, threatening and deceitful behavior. Furthermore, the sentence in **Coulverson** had a maximum of ninety years that clearly would have ended beyond the defendant's lifetime, whereas the maximum sentence here is forty years, which will end during Appellant's natural life span.[3] Moreover, unlike in

_____

[3] The record reflects that Appellant was born in 1992.

*Coulverson*, the sentencing court herein explicitly considered and acknowledged Appellant's difficult upbringing and repeated participation in diversion programs when issuing its terms of sentence. Thus, Appellant's reliance on *Coulverson* is misplaced.

Appellant also argues that the sentencing court imposed a lengthy sentence due to its anger over this Court's decision in *Simmons*. To review, on June 3, 2021, the court found Appellant in violation of his probation and parole due to his conduct against the complainant and her family and resentenced Appellant to five to fifteen years' imprisonment. On August 18, 2021, this Court issued its *en banc* decision in *Simmons*, which held that a trial court may not anticipatorily revoke an order of probation if conduct giving rise to a violation of probation occurred after sentencing but before the period of probation had begun. *Id.*, 262 A.3d at 527. Thus, an order revoking parole does not impose a new sentence but instead requires a defendant "to serve the balance of a valid sentence previously imposed."[4] *Id.* On September 30, 2021, following the issuance of *Simmons*, the court restored Appellant's original sentence of 11½-23 months' imprisonment plus probation and ordered Appellant to serve the remainder of his imprisonment, just four months. Upon his release from prison, Appellant again began harassing the complainant and her family, which resulted in his convictions in Bucks County,

_____

[4] *See also Commonwealth v. Rosario*, 294 A.3d 338, 356 (Pa. 2024) (approving this Court's decision in *Simmons*).

- 20 -

revocation of his probation, and the twenty-to-forty year sentence presently under review. Appellant insists that the court imposed this sentence not to administer justice but to exact vengeance:

> Still smarting from having to vacate the 5 to 15 years' sentence it had initially imposed on Appellant for violating his supervision, the lower court doubled down, imposing consecutive, maximum sentences of 10 to 20 years' incarceration, the very worst it could do. . . .
>
> Although the lower court asserted that it was imposing the sentence it imposed to protect the complainant and her family (N.T. 11/17/23, 33), the several significant irregularities in this case bespeak the court's true intention, which was to vindicate itself by imposing a sentence significantly harsher than the previous sentence the court was forced, by this Court's holding in **Simmons**, to vacate. In its eagerness, the court found Appellant in violation of his probation and revoked his probation (**see** Docket, entry for 9/29/23) on a day that Appellant had not been brought to court from state prison and no formal revocation hearing was held (see N.T. 9/29/23, 3-4). But perhaps the exact violations were of no consequences to the court anyway.

Appellant's Brief at 22.

Appellant's view of the court's sentencing is belied by the record. During the post-**Simmons** hearing on September 30, 2021, when the court vacated Appellant's five-to-fifteen year sentence, it warned Appellant that he would receive an even harsher sentence if he made the "slightest contact" with the complainant or her family. N.T., 9/30/21, at 15, 21. Despite this explicit warning, Appellant refused to stop harassing and threatening the complainant and her family. This conduct, along with Appellant's prior crimes and misconduct, demonstrate his contempt for the law and for the rights, freedoms

and safety of other people. We decline to find under these circumstances that his sentence is an abuse of discretion.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/1/2025